979 P.2d 114

## POTLATCH CORPORATION, Plaintiff–Respondent,

v.

## BELOIT CORPORATION, Defendant–Appellant.

No. 24202.

Supreme Court of Idaho, Moscow, September 1998 Term.

April 2, 1999.

Rehearing Denied May 20, 1999.

Elam & Burke, P.A., Boise, for appellant. Carl P. Burke argued.

Clements, Brown & McNichols, Lewiston; Sacks, Montgomery, New York, New York, for respondent. David E. Montgomery argued.

WALTERS, Justice.

This is an appeal from the amended judgment in favor of Potlatch Corporation following a jury trial on claims of breach of contract and breach of warranty. We conclude that the district court should not have al-

lowed amendment of Potlatch's complaint to add allegations that Beloit Corporation acted in bad faith in soliciting the contract and through misrepresentations occurring during the parties' negotiations. We vacate the amended judgment and remand the case for a new trial.

## FACTUAL BACKGROUND

On August 22, 1989, Potlatch Corporation contracted with Beloit Corporation for the design and manufacture of seven large pulp washers as part of its mill modernization program. Potlatch agreed to buy from Beloit a pulp washer system consisting of two pre-oxygen washers, two post-oxygen washers and three bleach washers. Potlatch's requirements and specifications were set forth in the purchase order, which became a part of the parties' contract, along with several letters in which the parties negotiated the technical terms of the sale. In addition to designing and installing the washers, Beloit agreed to provide mechanical warranties against defects in design, materials and workmanship, whereby Beloit was obligated to repair or replace, without cost to Potlatch, any part of the work which failed to comply or became defective during the warranty period. In another provision of the contract, Beloit provided a performance guarantee requiring, in part, operating standards which would yield: (a) a specified amount of clean water needed on the fourth brownstock washer to accomplish the washing, known as the "dilution factor;" (b) a specified amount of lignin and cooking chemicals remaining in the pulp as it leaves the fourth brownstock washer, known as "salt cake carryover;" (c) a specified amount of lignin and chemicals recaptured in the filtrate returning from the first washer, known as "black liquor solids;" and (d) down-time for repairs or other problems which was not to exceed 7.2 hours per month.

The washers purchased from Beloit were put into operation by July of 1992. Several months later during Potlatch's annual six-day shutdown, structural cracks in the longitudinal bars in all seven washers were discovered by Potlatch. As a result, Beloit redesigned the washer drums and implemented the first modifications to the drums in May of 1993. Subsequent modifications were accomplished as new cracks on the washer drums and the welds would occur. After three years of progressive cracking and other problems with the wires and seals, ineffective corrective measures, and extensive, costly accommodations to the washing line to facilitate needed repairs, Potlatch determined that the washer drums purchased from Beloit were inadequate under normal operating stresses and that they failed to meet the performance specifications which Beloit had guaranteed. Although Beloit employees were regularly on-site to direct repairs and in spite of Beloit expending approximately seven million dollars to modify the washers, Potlatch concluded that the washers had to be replaced. In November 1995, Potlatch issued a purchase order for four vacuum washers to replace the Beloit washers, embarking on a replacement schedule that extended into 1998, at a projected cost of $53 million dollars.

## PROCEDURAL HISTORY

In December 1995, Potlatch filed a breach of contract action against Beloit regarding the purchase and sale of the pulp washing system that was installed at Potlatch's Lewiston, Idaho mill. In its complaint, Potlatch asserted that Beloit had supplied a washer system which was wholly unfit for its intended purpose and that Beloit had breached the warranty against defects and non-compliance as well as the performance guarantees set forth in the parties' contract. The action, which was filed in the Nez Perce County district court, sought the recovery of costs for removal of the Beloit washers and evaluation of suitable replacement systems, as well as the cost of increased maintenance, use of fresh water, processed pulp, evaporation of excessively black liquor and downtime incurred as a result of the deficient performance of the Beloit washers. Beloit defended on the grounds that the failures in the washers were the result of improper operation of the system by Potlatch and that it had been refused permission from Potlatch to conduct the performance tests which were a condition precedent to any liability by Beloit.

Approximately six months after Beloit answered the complaint, Potlatch moved to amend the complaint to add a claim for lost profits based upon Beloit's alleged bad faith in soliciting and performing the purchase order and in breaching its fundamental obligations to Potlatch. Beloit opposed the motion, raising the limitation of damages clause in the parties' contract which precluded the recovery of lost profits in the event of a breach. Beloit argued that to allow the amendment which incorporated a claim of bad faith into the plaintiff's case would convert a breach of contract action into a tort action. The motion to amend was granted.

Beloit filed a motion for change of venue to another county in the state where it could be assured of a fair trial unaffected by the pervasive presence and influence of Potlatch in Nez Perce County. This motion, which relied on I.R.C.P. 40(e) and 12(b)(3), was denied. Additionally, Beloit's motions to vacate the trial date based upon a lack of time to adequately prepare to defend against the amended "bad faith" claim were also denied.

Beloit then filed motions in limine and motions for summary judgment. Potlatch moved to strike these motions as untimely, and the district court expedited a hearing on the motions. The district court denied Beloit's motions on the ground that the motions were not filed within the time limited by the court's second amended scheduling order of December 13, 1996.

The jury trial began on April 7, 1997. After the jury was selected, Beloit moved to strike the jury panel for bias pursuant to I.R.C.P. 47(h). The motion was denied. Near the end of the fifty-day trial, Potlatch brought a motion to redact the forum clause in the contract designating San Francisco as the proper forum for any action which might be brought to enforce the provisions of the contract. The district court granted this motion.

The jury returned a verdict for Potlatch finding that (a) Beloit had breached the performance guarantee; (b) Beloit was not excused from liability on account of any conduct by Potlatch; (c) Beloit had breached the warranty against defects and non-compliance; (d) that the washers' failures to comply

with the warranty were not caused by any misuse of the washers by Potlatch; and (e) Beloit had acted in bad faith in its dealings with Potlatch relating to the washers. The jury awarded Potlatch damages in the sum of $95,058,746 on its amended complaint. Judgment in favor of Potlatch was entered on June 30, 1997.

Beloit filed a motion for new trial, claiming that the district court erred in declining to change venue, not granting a mistrial, ruling on the admissibility of certain evidence, instructing the jury, and in allowing an award of prejudgment interest. The motion was denied. In response to the memorandum of costs and attorney fees submitted by Potlatch, Beloit filed a motion to disallow costs. After a hearing, the district court issued its opinion and entered an amended judgment, to include an award of fees and costs of $4,640,741.27. Beloit timely appealed.

## DISCUSSION

■■■■ The decision to grant or refuse permission to amend a complaint is left to the sound discretion of the district court and will not be disturbed on appeal absent an abuse of discretion. *Hines v. Hines,* 129 Idaho 847, 934 P.2d 20 (1997). To determine whether an amended complaint should be allowed, the court may consider whether the new claim proposed to be inserted into the case by the amended complaint states a valid cause of action. *Black Canyon Racquetball Club, Inc. v. Idaho First Nat'l Bank,* 119 Idaho 171, 175, 804 P.2d 900, 904 (1991); *Bissett v. State,* 111 Idaho 865, 727 P.2d 1293 (Ct.App. 1986).

The district court granted Potlatch leave to amend its complaint to add the following paragraph:

Beloit acted in bad faith in soliciting and performing the Purchase Order, and breached its fundamental obligations to Potlatch; and therefore Potlatch is entitled to recover its lost revenues attributable to Beloit's breach of the Purchase Order, in an amount to be determined at trial.

The district court concluded that Potlatch's proposed amendment was not a new and independent claim but was merely a supple-

mental basis for recovery of the damages sought in its original complaint. Despite the contract's exclusion of lost revenues upon a breach, the district court concluded that the Uniform Commercial Code (U.C.C.) had frequently been interpreted in a way which permits a consequential damages provision to fail if the party it protects acted in bad faith. As a result of the amendment, Potlatch was allowed to present evidence of Beloit's alleged acts of bad faith, deception, misrepresentation, and concealment in the pre-contract negotiations and during the performance of the contract and to argue that this conduct caused the bar against lost revenues to fail of its essential purpose, just as the exclusive remedy had failed.

Beloit asserts that it was error for the district court to grant Potlatch's motion to amend the complaint which changed the focus of the case to Beloit's intentions and motivations that are not relevant considerations in a breach of contract action. Beloit argues that the amendment purports to hold a defendant in a breach of contract action to a good faith standard in contract negotiations, a tort which is not recognized in Idaho. Further, Beloit maintains that bad faith has not been held to be a valid basis for negating a contractual limitation of damages clause. Potlatch counters that, having acted in bad faith, Beloit may not take advantage of a contract clause designed to protect it from liability, thus entitling Potlatch to circumvent the limitation of damages clause excluding the recovery of lost profits upon a breach.

Clearly, the contract for the sale of the pulp washing system in this case is governed by Article 2 of the U.C.C. which deals with the sale of goods between merchants. *See* I.C. § 28–2–105(1); I.C. § 28–2–104(1), (3). Upon every contract, the act imposes an obligation of good faith in the performance or enforcement of the contract. I.C. § 28–1–203. Both parties to the contract have a duty to act in good faith. *Clark v. Internat'l Harvester Co.*, 99 Idaho 326, 340, 581 P.2d 784, 798 (1978). For a contract made by a merchant, good faith is defined as "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade," I.C. § 28–2–103(b).

Here, the issue of bad faith was raised ostensibly to affect the limitation of recovery and to overcome the parties' contractual bar to an award of lost profits in the event of breach. Potlatch relied on cases from other jurisdictions holding damage limitations invalid when a defendant acts fraudulently or in bad faith. In *Long Island Lighting Co. v. Transamerica Delaval, Inc.*, 646 F.Supp. 1442 (S.D.N.Y.1986), allegations of misrepresentation and fraudulent concealment which led to the purchase of the defendant's product were dismissed on collateral estoppel grounds. In *Colonial Life Insurance Co. of America v. Electronic Data Systems Corp.*, 817 F.Supp. 235 (D.N.H.1993), the same allegations were held only to create a genuine issue of fact precluding summary judgment. These cases, both of which contained a claim alleging fraud in addition to the breach of contract claims, however, provide no support for Potlatch's argument seeking to allege bad faith in soliciting the contract as a basis for recovery of contract damages.

■ The definition of good faith found in I.C. § 28–1–203 makes good faith relevant to the parties' performance of a contract. The Comment to the Official Text of I.C. § 28–1–203 recites that particular application of this general good faith principle appears in specific provisions of the Act, such as the option to accelerate at will (Section 1–208), the right to cure a defective delivery of goods (Section 2–508), the duty of a merchant buyer who has rejected goods to effect salvage operations (Section 2–614), and failure of presupposed conditions (Section 2–615). From these examples, which all relate to asserted breaches of an executed contract, we can infer that pre-contractual misdeeds by a party are outside the scope of the Act (although they may, if supported by a proper factual basis, be redressed through claims of fraud and misrepresentation). We conclude therefore that a party's allegations of bad faith must relate exclusively to the failure to perform the obligations of the contract, not to misrepresentations occurring during the negotiations preceding the contract. Accordingly, we hold the amendment to Potlatch's complaint, insofar as it alleges bad faith in

*soliciting* the contract, to be in error.[1] Without deciding that a good faith standard can be specifically applied to the limited remedies provision of I.C. § 28–2–719 to nullify the enforcement of the limitation of damages clause in a contract, we note that subsection (3) of the statute explicitly authorizes the contractual exclusion of damages "unless the limitation is unconscionable." Whether bad faith can be deemed the equivalent of unconscionability or whether conduct found by the fact finder to be in bad faith rises to the level of unconscionability are questions we leave for another day.

Because it is impossible to assess the effect the proffered evidence of bad faith regarding the contract negotiations may have had on the jury's decision, we vacate the judgment awarding damages to Potlatch and remand the case to the district court for a new trial.

Costs on appeal are awarded to the appellant, Beloit; no attorney fees are awarded.

Chief Justice TROUT and Justices SILAK, SCHROEDER and Justice Pro tem, JOHNSON, CONCUR.

---

1. The jury instructions given by the district court suffer from the same infirmity found in the amendment to the complaint. We find that the instructions which defined good faith and contained references to bad faith in the pre-contract stage of the parties' dealings expanded the good faith obligation imposed by I.C. § 28–1–203 and were incorrect statements of the law.