IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

MAY 21 2007

COURT OF APPEALS
DIVISION TWO



AIRFREIGHT EXPRESS LTD., a United
Kingdom corporation,

                        Plaintiff/Appellant,

                        v.

EVERGREEN AIR CENTER, INC., an
Oregon corporation,

                        Defendant/Appellee.

)
)
)
)
)
)
)
)
)
)
)
)
)

2 CA-CV 2006-0149
DEPARTMENT B

O P I N I O N

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20042309

Honorable Leslie Miller, Judge

REVERSED AND REMANDED

Fennemore Craig, P.C.
  By James J. Trimble and David A. Weatherwax            Phoenix
                              Attorneys for Plaintiff/Appellant

Law Offices of Joel L. Herz
  By Joel L. Herz and Russell B. Stowers                 Tucson
                             Attorneys for Defendant/Appellee

B R A M M E R, Judge.

¶1 Appellant Airfreight Express, Ltd. ("AFX") appeals from the trial court's grant of appellee Evergreen Air Center, Inc.'s ("Evergreen") motion to dismiss and motion for summary judgment in AFX's action arising out of AFX's contracts with Evergreen for maintenance and repair of AFX's Boeing 747 aircraft. AFX asserts on appeal that the doctrines of claim and issue preclusion do not bar its claims and that summary judgment was improper. We reverse.

**Factual and Procedural Background**

¶2 "When a motion to dismiss for failure to state a claim is granted, review on appeal necessarily assumes the truth of facts alleged in the complaint." *Logan v. Forever Living Products Int'l, Inc.*, 203 Ariz. 191, ¶ 2, 52 P.3d 760, 761 (2002). On appeal from a summary judgment, we view the evidence and all reasonable inferences therefrom in the light most favorable to the party against whom summary judgment was granted. *Walk v. Ring*, 202 Ariz. 310, ¶ 3, 44 P.3d 990, 992 (2002).

¶3 In November 2000, AFX contracted with Evergreen for maintenance and repairs to its Boeing 747 aircraft so that AFX could perform an air cargo contract it had with Air France. AFX was to pay Evergreen to perform the repairs on a time and materials basis. Disputes arose between the parties concerning delays in making repairs and the amount of Evergreen's charges. In an attempt to complete the repairs and avoid litigation, the parties, in February 2001, entered a settlement agreement.

¶4     That agreement contained a clause releasing Evergreen from "any and all . . . [c]laims . . . which could arise out of or derive from" the maintenance agreement, "except for the obligations of Evergreen set forth in this Settlement Agreement."  It also stated, "[e]xcept as specifically set forth herein, none of the terms of the [maintenance agreement is] being modified and [that agreement] shall remain in full force and effect."  The settlement agreement required AFX to make three payments to Evergreen, one on February 23, a second on February 26, and a final payment "prior to any test flight."  Evergreen, "[u]pon receipt of the [first] payment from AFX," was to "recommence work on the Aircraft and make best efforts to complete the maintenance work requested of Evergreen by March 1, 2001."  The settlement agreement gave Evergreen "the right to immediately cease working on the aircraft" should AFX fail to make a required payment.

¶5     AFX president Philip Bowles stated in his declaration that, after the parties entered the settlement agreement, Evergreen "failed to assign a sufficient number of mechanics and inspectors to work on the Aircraft" and "perform[ed] only two hours of work on the aircraft on February 28" and none at all "from March 1 through March 4."  AFX had timely made the first payment due under the settlement agreement but failed to make the payment due February 26 until the end of the day Friday, March 2.

¶6     Bowles stated Evergreen completed the repairs on March 15, and Evergreen "issued a Maintenance Release stating that all of the work that Evergreen had done on the Aircraft was 'carried out in accordance with [FAA and CAA regulations]'" and that the

3

Aircraft was "ready for Release to Service." (Emphasis removed.) Bowles further asserted that, "[a]fter AFX had received the Aircraft from Evergreen," AFX discovered that many of the required repairs had been made improperly and several had been omitted altogether. The asserted problems included incorrectly calibrated fuel gauges, an improperly repaired "rear pressure bulkhead," improper service of a navigational system, and faulty repair of mechanisms involving the wing flaps.

¶7        In August 2001, AFX filed an action against Evergreen alleging, inter alia, breach of both the maintenance and settlement agreements, fraud, and "unlawful conduct." Evergreen counterclaimed for fraud, unjust enrichment, and breach of contract. Ultimately, upon Evergreen's motion to dismiss, the trial court dismissed AFX's claims without prejudice and Evergreen prevailed on its breach of contract counterclaim after a bench trial.

¶8        AFX filed the instant action within a week of the trial court's ruling in favor of Evergreen on its breach of contract counterclaim in the first action. AFX alleged, as amended, breach of both agreements, fraud, violation of Arizona's Consumer Fraud Act, A.R.S. §§ 44-1521 through 44-1534, unlawful activity pursuant to A.R.S. § 13-2314.04, and conversion, and also sought rescission of the settlement agreement on the basis of fraud, bad faith, duress, and a lack of consideration. Evergreen filed a third-party complaint against Bowles alleging fraud. Evergreen also filed a motion to dismiss the complaint arguing the doctrine of claim preclusion barred AFX's claims and the statute of limitations barred AFX's claims of conversion, violation of the Consumer Fraud Act, and unlawful activity. The trial

4

court granted the motion to dismiss as to all but AFX's claim for breach of the settlement agreement, stating AFX would "be precluded from contesting the amount of charges or actions of [Evergreen] prior to the signing of the settlement agreement."

¶9    Evergreen then filed a motion for summary judgment asserting the maintenance agreement and the release clause in the settlement agreement barred AFX's claim for lost profits caused by Evergreen's alleged delay in completing the aircraft repairs. The trial court granted the motion "on the issue of timely completion of repair of the aircraft," but denied it "as to the adequacy of repair." The court also clarified its ruling on Evergreen's motion to dismiss, stating, "based on [Evergreen's] judgment for its contract claim in the prior case, [AFX's] Breach of Contract Claim shall be limited to events subsequent to the settlement agreement. Should Evergreen pursue its [third-party complaint against Bowles] for fraud, evidence of prior workmanship shall be admissible."[1]

¶10    The parties then entered a stipulation and filed a proposed judgment. The stipulation described the parties' interpretation of the trial court's rulings[2] and requested the

_____

[1]The trial court later granted Bowles's motion for summary judgment on Evergreen's fraud claim.

[2]The stipulation stated, inter alia, that the trial court had ruled AFX could not seek "to recover any damages arising out of or relating to Evergreen's failure after [the settlement agreement was signed] to repair any defects in the Aircraft that were the result of any action or inaction by Evergreen . . . prior to [the signing of the settlement agreement]." It also stated AFX could not recover damages from any misrepresentations made by Evergreen concerning repairs performed before the agreement was signed, and prohibiting AFX from "offering any evidence . . . relating to any action or inaction by Evergreen prior to [the agreement] for any purpose whatsoever." At the hearing discussing the proposed stipulated

5

court enter the proposed judgment because "the parties believe it is in their best interests to avoid a trial on the remaining claim." The court signed the proposed judgment in favor of AFX for $15,000 "to act only as a set-off from the prior Judgment[] entered in [the first action] in favor of Evergreen." The stipulated judgment also stated it "shall not limit either party from making any argument on any issue in the Court of Appeals" and, "[i]f the Court of Appeals remands this case for any further proceeding before the Trial Court," then the judgment would be vacated and have no preclusive effect. This appeal followed.

**Discussion**

Motion to Dismiss the Complaint

¶11 AFX first contends the trial court erred in granting Evergreen's motion to dismiss the complaint. We review a trial court's grant of a motion to dismiss for an abuse of discretion, but review issues of law de novo. *Dressler v. Morrison*, 212 Ariz. 279, ¶ 11, 130 P.3d 978, 980 (2006). "We will 'uphold dismissal only if the plaintiff[] would not be entitled to relief under any facts susceptible of proof in the statement of the claim.'" *Id., quoting Mohave Disposal, Inc. v. City of Kingman*, 186 Ariz. 343, 346, 922 P.2d 308, 311 (1996) (modification in *Dressler*). Evergreen argued in its motion to dismiss that the judgment in Evergreen's favor in the first action barred all AFX's claims under the doctrine

---

judgment, the court stated it "ma[d]e a record regarding the extent of the prior rulings to which counsel agree." That record, however, is not before us.

6

of res judicata, also known as claim preclusion.[3]  The trial court granted the motion as to all but AFX's claim for breach of the settlement agreement but did not explain the reason for its ruling, a practice we discourage.  *See Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 495 n.3, 733 P.2d 1073, 1078 n.3 (1987) ("We urge trial judges to articulate their reasoning so appellate courts can determine on appeal whether the ruling was erroneous.").

¶12        AFX first contends the doctrine of claim preclusion does not apply "because all of [its] claims in the first lawsuit were dismissed without prejudice before the counterclaim trial."  "Under the doctrine of claim preclusion, a final judgment on the merits in a prior suit involving the same parties or their privies bars a second suit based on the same claim." *Dressler*, 212 Ariz. 279, ¶ 15, 130 P.3d at 981.

¶13        In the first action, the trial court granted Evergreen's motion to dismiss and dismissed AFX's complaint "without prejudice."  Under Rule 41(b), Ariz. R. Civ. P., 16 A.R.S., Pt. 1, an involuntary dismissal "operates as an adjudication on the merits" unless "the court in its order . . . otherwise specifies."  A dismissal without prejudice, however, is not an adjudication on the merits and does not bar a second action under the doctrine of claim preclusion.[4] *See Union Interchange, Inc. v. Van Aalsburg*, 102 Ariz. 461, 464, 432 P.2d 589,

---

[3]We use the more modern terms "claim preclusion" instead of "res judicata" and "issue preclusion" instead of "collateral estoppel." *See Circle K Corp. v. Indus. Comm'n*, 179 Ariz. 422, 425, 880 P.2d 642, 645 (App. 1993); *see also In re Gen. Adjudication of All Rights to Use Water In Gila River Sys. & Source*, 212 Ariz. 64, ¶ 14, n.8, 127 P.3d 882, 887, 888 n.8 (2006).

[4]Accordingly, we do not address the parties' argument whether the trial court "reserved" AFX's claims for a second action. *See, e.g., Heinig v. Hudman*, 177 Ariz. 66, 71,

7

592 (1967) ("A dismissal without prejudice does not go to the merits of the plaintiff's cause and does not bar plaintiff from later filing on the same cause of action."); *cf. Phillips v. Ariz. Bd. of Regents*, 123 Ariz. 596, 598, 601 P.2d 596, 598 (1979) (order not specifying whether involuntary dismissal was with prejudice is adjudication on the merits).

¶14         Evergreen argues, although the trial court in the first action dismissed AFX's claims without prejudice, claim preclusion applies because AFX, in the first action, "re-asserted the same claims [the court had dismissed without prejudice] in the form of a reply to Evergreen's counterclaim" as affirmative defenses. The doctrine of claim preclusion, however, does not bar a later action asserting claims alleged as affirmative defenses in a prior action because affirmative defenses are not claims. *Cf. Norman A. Koglin Assocs. v. Valenz Oro, Inc.*, 680 N.E.2d 283, 288 (Ill. 1997) ("A counterclaim differs from an . . . affirmative defense. A counterclaim is used when seeking affirmative relief, while an . . . affirmative defense seeks to defeat a plaintiff's claim."). Instead, in that circumstance, issue preclusion may bar certain issues from being re-litigated in a subsequent proceeding. *See* Restatement (Second) of Judgments § 22 cmt. c (1982) ("Where the same facts constitute a ground of defense to the plaintiff's claim and also a ground for a counterclaim, the defendant alleges those facts as a defense but not as a counterclaim, and after litigation . . . judgment is given

---

865 P.2d 110, 115 (App. 1993) ("[An] exception [to claim preclusion] applies when a court expressly reserves the plaintiff's right to bring a second action."). As AFX correctly notes, because there was no judgment on AFX's claims in the first lawsuit, there was no need for the trial court to reserve any of AFX's claims for a future action.

8

for the plaintiff, the rules of issue preclusion apply."); *see also Jesik v. Maricopa County Cmty. Coll. Dist.*, 125 Ariz. 543, 546, 611 P.2d 547, 550 (1980) (in absence of contrary Arizona authority, appellate court may follow Restatement).

¶15        As our supreme court stated in *Hullet v. Cousin*, 204 Ariz. 292, ¶ 27, 63 P.2d 1029, 1034-35 (2003),

> Collateral estoppel, or issue preclusion, applies when an issue was actually litigated in a previous proceeding, there was a full and fair opportunity to litigate the issue, resolution of the issue was essential to the decision, a valid and final decision on the merits was entered, and there is common identity of parties.

Evergreen, however, did not raise issue preclusion as a defense in its motion to dismiss the second action, nor does it assert it on appeal as a valid basis for the trial court's grant of that motion.[5] *See Casillas v. Ariz. Dep't of Econ. Sec.*, 153 Ariz. 579, 581, 739 P.2d 800, 802 (App. 1986) ("As an affirmative defense, [issue preclusion] is waived if not properly asserted."). And a party asserting that an issue is precluded "has the burden of proving that an issue was in fact litigated and determined and that determination was necessary [to the decision]." *Bayless v. Indus. Comm'n*, 179 Ariz. 434, 439, 880 P.2d 654, 659 (App. 1993); *see also* Restatement (Second) of Judgments § 27 cmt. f (1982) ("The party contending that

---

[5]Evergreen contended at oral argument that, because Rule 8(c), Ariz. R. Civ. P., 16 A.R.S., Pt. 1, does not specifically include issue preclusion in its list of affirmative defenses, it could not have waived this defense by its failure to raise it in its motion to dismiss. The list of affirmative defenses in Rule 8(c), however, also includes "any other matter constituting an avoidance or affirmative defense," such as issue preclusion. *See Casillas v. Ariz. Dep't of Econ. Sec.*, 153 Ariz. 579, 581, 739 P.2d 800, 802 (App. 1986).

9

an issue has been conclusively litigated and determined in a prior action has the burden of proving that contention."). At oral argument, Evergreen cited to comments the trial court had made at a hearing on a later motion as an indication the court had considered issue preclusion in ruling on the motion to dismiss. In that transcript, however, AFX asked the court to make "a ruling on the record clearly" on the issues of claim preclusion, issue preclusion, and the settlement agreement. The court expressly declined to do so, stating, it had "already determined that there was . . . res judicata on this." The portions of the transcript Evergreen cites do not demonstrate that the court ruled on the question of issue preclusion, but instead show nothing more than AFX's counsel's apparent confusion as to the basis of the court's ruling. Because Evergreen did not attempt to meet its burden to demonstrate which issues should be precluded, it has waived this issue on appeal.[6]

¶16        In its order granting Evergreen's motion to dismiss, the trial court stated AFX was "precluded from contesting the amount of charges or actions of [Evergreen] prior to the signing of the settlement agreement." It later clarified that ruling at a status conference, stating AFX's "Breach of Contract Claim shall be limited to events subsequent to the settlement agreement. Should Evergreen pursue its claim for fraud, evidence of prior

---

[6]AFX discussed issue preclusion in its response to Evergreen's motion to dismiss. In Evergreen's reply in support of its motion, however, it did not address issue preclusion, asserting the final judgment in the first action applied to "every issue raised by the record that could have been decided"; a rule that applies to claim preclusion, not issue preclusion. *See 4501 Northpoint LP v. Maricopa County*, 212 Ariz. 98, ¶ 26, 128 P.3d 215, 220 (2006) ("Issue preclusion, in contrast [to claim preclusion], applies only as to issues that have in fact been litigated and were essential to a prior judgment.").

workmanship shall be admissible." AFX contends this ruling improperly limited its claim for breach of the settlement agreement "only to defective work that was done after the date of the Settlement Agreement." The trial court based its ruling "on [Evergreen's] judgment for its contract claim in the prior case." As we have explained, claim preclusion does not bar any of AFX's claims, and, therefore, a ruling limiting its claims on that basis was error.

¶17 Evergreen argues the release clause of the settlement agreement is a complete bar to all of AFX's claims, and thus supports the trial court's grant of Evergreen's motion to dismiss. AFX asserts Evergreen raised this argument for the first time on appeal and, consequently, has waived it. *See Englert v. Carondelet Health Network*, 199 Ariz. 21, ¶ 13, 13 P.3d 763, 768 (App. 2000) (court of appeals generally does not address issues raised for first time on appeal). Evergreen did not raise this argument in its motion to dismiss. And, although it raised the argument in its motion for summary judgment on AFX's remaining claim for breach of the settlement agreement, it limited its argument to whether the contracts barred AFX from receiving damages for lost profits stemming from Evergreen's alleged delays in conducting the repairs. "[A] party must timely present his legal theories to the trial court so as to give the trial court an opportunity to rule properly." *Payne v. Payne*, 12 Ariz. App. 434, 435, 471 P.2d 319, 320 (1970). In other words, the court must have had the opportunity to address the issue on its merits. *Cf. Crown Life Ins. Co. v. Howard*, 170 Ariz. 130, 132, 822 P.2d 483, 485 (App. 1991) (declining to find argument waived when trial court considered merits of argument first raised in motion for reconsideration). Raising this

11

argument after the trial court had already granted the motion to dismiss did not give the court an opportunity to address the merits of the argument as it applied to all of AFX's claims. Therefore, we agree with AFX that Evergreen has waived this argument on appeal.[7]

Motion for Summary Judgment

¶18 AFX next contends the trial court erred in granting Evergreen's motion for summary judgment "barr[ing] AFX from recovering damages caused by Evergreen's failure to timely complete the repairs." Evergreen's motion for summary judgment argued the limitation of damages clause in the maintenance contract prevented AFX from recovering lost profits caused by Evergreen's alleged delay in repairing the aircraft. That clause reads: "In no event shall Evergreen be liable to [AFX] for . . . special, incidental, or consequential damages, such as lost revenues, lost profits, or loss of prospective economic advantage, resulting from the delay in performance or failure to perform."

¶19 A trial court properly grants summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(c), 16 A.R.S., Pt. 2; *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). "On appeal from a summary judgment, we must determine *de novo* whether there are any genuine issues of material fact and whether the trial court erred in applying the law." *Bothell v. Two Point Acres, Inc.*, 192 Ariz. 313, ¶ 8, 965 P.2d 47, 50 (App. 1998). A trial

---

[7]Accordingly, we need not address AFX's argument that the release clause is unenforceable as a matter of public policy and void because Evergreen breached the settlement agreement.

12

court should only grant a motion for summary judgment "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch.*, 166 Ariz. at 309, 802 P.2d at 1008.

¶20 AFX argues "Evergreen's fraud and bad faith made the contractual limitation of damages unenforceable," relying on *Long Island Lighting Co. v. Transamerica Delaval, Inc.*, 646 F. Supp. 1442, 1458 (S.D.N.Y. 1986), and 15 Grace McLane Giesel, *Corbin on Contracts* § 85.18 at 471 (2003). Section 85.18 states, in relevant part: "A party may contract to limit liability in damages for nonperformance of promises. . . . Such a provision is not effective, however, if that party acts fraudulently or in bad faith." AFX cites no Arizona authority, and we find none, adopting this rule. Evergreen, however, does not argue this rule should not be adopted, only that AFX failed to provide sufficient evidence to overcome summary judgment on the question of bad faith.

¶21 Furthermore, we find several courts have approved of this or a similar rule and none has rejected it.[8] *See, e.g., Valve Corp. v. Sierra Entertainment Inc.*, 431 F. Supp. 2d 1091, 1101 (W.D. Wash. 2004) ("A limitation of liability clause may not apply where the

---

[8]In *Potlatch Corp. v. Beloit Corp.*, 979 P.2d 114, 117-18 (Idaho 1999), the Idaho Supreme Court distinguished *Long Island Lighting Co.*, stating it "provide[d] no support for [the plaintiff's] argument seeking to allege bad faith in soliciting the contract as a basis for recovery of contract damages." *But cf. Amer. Elec. Power Co. v. Westinghouse Elec. Corp.*, 418 F. Supp. 435, 460 (S.D.N.Y. 1975) ("The defendant cannot be heard to rely on the provisions of a contract which was entered into as a result of fraudulent actions on defendant's part.").

party relying on the clause acted in 'bad faith.'"); *Colonial Life Ins. Co. of Amer. v. Elec. Data Sys. Corp.*, 817 F. Supp. 235, 242-43 (D.N.H. 1993) ("[A] contractual limitation of liability is not enforceable . . . if plaintiff's claim of fraud, bad faith and/or 'total and fundamental' breach is proven at trial."); *Long Island Lighting*, 646 F. Supp. at 1458 ("A defendant may be estopped from asserting a contractual limitation of consequential damages if the defendant has acted in bad faith."); *City of Dillingham v. CH2M Hill Nw., Inc.*, 873 P.2d 1271, 1275 (Alaska 1994) ("Liability for 'knowing,' or 'bad faith' breaches can never be limited."); *J.A. Jones Constr. Co. v. City of Dover*, 372 A.2d 540, 545 (Del. Super. Ct. 1977) ("Even if a contract purports to give a general exoneration from 'damages,' it will not protect a party from a claim involving its own fraud or bad faith."); *Jewish Hosp. of St. Louis v. Boatmen's Nat'l Bank of Belleville*, 633 N.E.2d 1267, 1280 (Ill. App. Ct. 1994) ("Although exculpatory provisions such as this are not given special favor in the law, they are generally held effective except as to reckless or intentional breaches or those committed in bad faith."); *Corinno Civetta Constr. Corp. v. City of New York*, 493 N.E.2d 905, 910 (N.Y. 1986) (clause limiting liability for delay in construction contract not enforceable if delay caused by bad faith); *Psaty & Fuhrman v. Hous. Auth. of City of Providence*, 68 A.2d 32, 36 (R.I. 1949) ("If a party to a contract with such a [limitation of damages] clause acts honestly within the fair and legal import of its terms, he cannot be deprived of the benefit thereof unless his conduct indicates bad faith . . . , as every contract implies fair dealing between the parties.").

**¶22** Moreover, the purpose of the rule AFX proposes is consistent with § 195 of the Restatement (Second) of Contracts (1981), which prohibits contracts exempting parties from intentional or reckless tort liability, and A.R.S. § 47-2719(C) of Arizona's Uniform Commercial Code, which states: "Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable." And Arizona has long recognized parties to a contract have a duty to act in good faith. *See, e.g., Beaugureau v. Beaugureau*, 11 Ariz. App. 234, 236, 463 P.2d 540, 542 (1970). As a matter of public policy, a party should not benefit from a bargain it performed in bad faith. Accordingly, in the absence of any contrary argument or authority, we adopt this sensible rule.

**¶23** The Restatement (Second) of Contracts § 205 (1981) describes the duty of good faith and fair dealing in contract and comment (d) states:

> [B]ad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. A complete catalogue of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

*See also Rawlings v. Apodaca*, 151 Ariz. 149, 153, 726 P.2d 565, 569 (1986) ("The essence of th[e] duty [of good faith] is that neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship.").

**¶24** The record shows Air France cancelled its air cargo contract with AFX on March 8, 2001, because AFX was unable to perform—its 747 aircraft was not yet airworthy.

15

AFX asserts Evergreen acted in bad faith by intentionally failing "to complete the Repairs on time, so that its sister company (Evergreen International) could try to steal AFX's business away from Air France."[9]  The only evidence supporting this assertion is the signed declaration of an AFX employee, Ian Fairman, which states:

> On March 6, 2001, I met with Jacques Cliquet of Air France to discuss the problems that had arisen because of the delay in obtaining the Aircraft.  During that meeting, Mr. Cliquet told me that Air France had been contacted by Pierre Van Der Stichele of Evergreen International Aviation ("Evergreen International"), an affiliate of Evergreen.  Mr. Van Der Stichele told Air France that AFX's Aircraft would not be ready to fly for Air France, and that Air France should consider negotiating a deal to have Evergreen International provide air cargo service instead of AFX.

¶25  Evergreen asserts on appeal that this statement, and Bowles's declaration, are insufficient to preclude summary judgment because they contain hearsay and are unsigned and unsworn.[10]  *See* Ariz. R. Civ. P. 56(e), 16 A.R.S., Pt. 2 (affidavits supporting or opposing summary judgment "shall set forth such facts as would be admissible in evidence"); *In re*

---

[9]Evergreen asserts in its answering brief that "Bowles admitted below [during his deposition] that AFX itself had no [evidence of Evergreen's bad faith]."  Evergreen reads Bowles's testimony too broadly; he stated only that he could not "specifically recall" any agreements AFX could not meet due to delays in the delivery of the aircraft.

[10]Evergreen also argues AFX must provide clear and convincing evidence of fraud or bad faith.  Although a fraud claim must be proven by clear and convincing evidence, *Rhoads v. Harvey Publ'ns, Inc.*, 145 Ariz. 142, 146, 700 P.2d 840, 844 (App. 1984), a bad faith claim need only be proved by a preponderance of the evidence.  *See Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395*, 201 Ariz. 474, n. 18, 38 P.3d 12, 31 n. 18 (2002) ("Proof of a breach of the implied covenant of good faith and fair dealing requires a preponderance of the evidence.").

*Wetzel*, 143 Ariz. 35, 43, 691 P.2d 1063, 1071 (1984) ("An 'affidavit' is a signed, written statement, made under oath before an officer authorized to administer an oath or affirmation in which the affiant vouches that what is stated is true."). Although the declarations by Bowles, Fairman, and AFX employee Leigh Abbot attached to AFX's response to Evergreen's summary judgment motion were unsigned, AFX later submitted signed copies of those declarations. The signed declarations stated they were made under penalty of perjury. *See* Ariz. R. Civ. P. 80(i), 16 A.R.S., Pt. 2 (any matter that rules require or permit to be supported by affidavit "may, with like force and effect, be supported . . . by the unsworn written declaration . . . subscribed by such person as true under penalty of perjury, and dated"). The declarations, however, were not dated and thus do not meet the requirements of Rule 80(i).

¶26 Despite Evergreen's assertion to the contrary in its answering brief, however, we are unable to find any contemporaneous objection made by Evergreen or motion to strike any of the signed declarations.[11] Neither Evergreen's reply in support of its motion for summary judgment nor its objection to AFX's statement of facts contains any evidentiary objection or objection to the sufficiency of the documents. Although Evergreen did object to the contents of the affidavits in response to AFX's later motion for summary judgment, those objections were not timely because the trial court had already ruled on Evergreen's

---

[11]Evergreen did move to strike the purported declaration of Cliquet. Although the trial court apparently never ruled on that motion, AFX does not rely on that document on appeal.

motion for summary judgment. *Cf. Estate of Reinen v. N. Ariz. Orthopedics, Ltd.*, 198 Ariz. 283, ¶ 9, 9 P.3d 314, 317 (2000) ("An objection to proffered testimony must be made either prior to or at the time it is given, and failure to do so constitutes a waiver."). Moreover, Evergreen's objections were to those specific portions of the declarations relevant to Evergreen's defective repair of the aircraft, not to the timeliness of its repairs or AFX's allegations of bad faith. And Evergreen never moved to strike any of the declarations AFX relies on in this appeal. Thus, we conclude Evergreen has waived on appeal any argument the declarations are insufficient, contain inadmissible evidence, or that the declarations are "suspect" because the signature pages "appear to have been generated long after the declarations were filed, and the filed signature pages did not match those of the original declarations." *See Johnson v. Svidergol*, 157 Ariz. 333, 335, 757 P.2d 609, 611 (App. 1988) ("[d]eficiencies in supporting documents attached to summary judgment pleadings can be waived" by failure to move to strike or object); *see also A. Uberti & C. v. Leonardo*, 181 Ariz. 565, 568, 892 P.2d 1354, 1357 (1995) (evidentiary objections to affidavits filed in summary judgment proceeding waived on appeal when not made to trial court). "Objection to insufficient documentation is required so that the offering party may have an opportunity to cure the alleged defects." *Johnson*, 157 Ariz. at 335, 757 P.2d at 611.

¶27        Fairman's statement regarding the Air France contract, if we assume its admissibility, would permit a jury to infer Evergreen had acted in bad faith if Evergreen were also at fault in the delay in the repair of AFX's aircraft. In support of that contention, Bowles

18

stated in his declaration that Evergreen had "failed to assign a sufficient number of mechanics and inspectors to work on the Aircraft" and "perform[ed] only two hours of work on the aircraft on February 28" and none at all "from March 1 through March 4." Abbot, who served as AFX's "technical representative at Evergreen" during the repair of the aircraft testified Evergreen "never assigned enough mechanics to the job in order to complete the work on time." Evergreen responds that AFX's failure to make timely payments and promptly provide parts required for the repairs caused any delay.

¶28      AFX does not dispute it failed to make the payment due February 26 until the end of the day Friday, March 2. Thus, under the terms of the settlement agreement, Evergreen was not obligated to continue working on the aircraft until AFX made the payment. Evergreen vice president Michael Melvin testified "Evergreen immediately recommenced work" on "the following Monday, March 5." Abbot testified, however, that Evergreen customarily "work[ed] full shifts on the weekends and Evergreen's mechanics were available to do the work on March 3 and 4."[12]

---

[12]Evergreen does not argue on appeal, and did not argue below, that AFX's failure to make timely payments was a material breach of the settlement agreement permitting Evergreen to cease work on the aircraft past the time AFX made the payment due February 26. *Cf. Allan v. Martin*, 117 Ariz. 591, 593, 574 P.2d 457, 459 (1978) ("When time for performance is material to a contract and one party fails to perform by the contract deadline date, the other party may treat the contract as ended."); *Zancanaro v. Cross*, 85 Ariz. 394, 399, 339 P.2d 746, 749 (1959) ("One of the remedies available at common law upon a material breach of contract is the right to cease performance and recover the profits which would have been made had the entire contract been performed."). Therefore, we do not address this issue.

19

¶29      Melvin also identified several parts required for the repairs that he asserted

AFX had failed to timely order and deliver. Abbot stated AFX delivered those parts

promptly after Evergreen requested them, and, "[i]f Evergreen had properly staffed the job,

it would have identified the needed parts well before March 1, 2001, and AFX could have

provided the parts in time for Evergreen to complete the work." Abbot and Melvin's

conflicting testimony clearly creates a factual dispute as to whether Evergreen caused the

delays in its repair of the aircraft. Consequently, AFX has presented sufficient facts to

preclude summary judgment on whether Evergreen performed the contract in bad faith.[13] *See*

*Orme Sch.*, 166 Ariz. at 309, 802 P.2d at 1008.

Attorney Fees

¶30      Both parties request attorney fees on appeal pursuant to A.R.S. § 12-341.01.

In our discretion, we decline to award fees without prejudice to either party to again request

them below. AFX also requests fees "pursuant to the terms of the Maintenance Agreement

[and] the Settlement Agreement." Although the maintenance agreement provides "the

prevailing party . . . shall be awarded costs and reasonable attorney's fees as part of the

judgment in such action," there has been no such judgment. Accordingly, its request for fees

is denied, but such fees may be included in any future attorney fee award if there is a

---

[13]Evergreen also asserts "AFX's warranty claims were barred as a matter of law." Evergreen made this argument below in its motion for summary judgment and the trial court apparently denied the motion as to that ground. Because we dismissed Evergreen's cross-appeal we do not address this issue. *See Manic v. Dawes*, 213 Ariz. 252, ¶ 5, 141 P.3d 732, 733 (App. 2006).

judgment based on the maintenance agreement. The settlement agreement, however, does not provide for an award of attorney fees; it instead requires each party to bear its own fees and costs in "all matters arising out of or connected" with the "negotiation, drafting and execution of this Agreement."

**¶31**     Evergreen's request for costs pursuant to A.R.S. § 12-341 is denied because it is not "[t]he successful party to [this] civil action." And we deny its request for attorney fees and expenses pursuant to A.R.S. § 12-349. Nothing in the record suggests AFX's claims were brought "without substantial justification" or for the purpose of harassment, nor that AFX sought to "unreasonably expand[] or delay[] the proceeding." A.R.S. § 12-349(A).

**Disposition**

**¶32**     We reverse the trial court's grant of Evergreen's motion to dismiss and motion for summary judgment. We remand the case to the trial court for proceedings consistent with this decision.

_____
J. WILLIAM BRAMMER, JR., Judge

CONCURRING:


_____
PETER J. ECKERSTROM, Presiding Judge


_____
PHILIP G. ESPINOSA, Judge

21