NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

THIRUSELVAM SHOSUN SHONI SAKTHIVEIL, *Plaintiff/Appellant,*

v.

CAPITAL FUND I, LLC, *Defendant/Appellee.*

No. 1 CA-CV 19-0114
FILED 2-6-2020

Appeal from the Superior Court in Maricopa County
No. CV2017-012495
The Honorable Daniel J. Kiley, Judge

**AFFIRMED**

APPEARANCES

Thiruselvam Shosun Shoni Sakthiveil, Phoenix
*Plaintiff/Appellant*

Gammage & Burnham, PLC, Phoenix
By Cameron C. Artigue
*Counsel for Defendant/Appellee*

---

## MEMORANDUM DECISION

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge Kent E. Cattani joined.

---

**B R O W N**, Judge:

**¶1**          Thiruselvam Shosun Shoni Sakthiveil ("T.S.") appeals the superior court's grant of summary judgment on his claims against Capital Fund I, LLC ("Capital") and the court's award of attorneys' fees. This is T.S.'s second appeal arising from the same underlying facts. *See Capital Fund II LLC v. Sakthiveil*, 1 CA-CV 17-0228 (Ariz. App. Feb. 22, 2018) (mem. decision) ("*Sakthiveil I*"). Finding no genuine dispute of material fact precluding summary judgment, we affirm.

### BACKGROUND

**¶2**          T.S. was a "professional real estate investor" and landlord of multiple rental properties. After consulting with a broker from AJG Financial Corp. about a possible loan, T.S. agreed to borrow approximately $4,260,000 from Capital, a private short-term commercial lender. The loans were confirmed by promissory notes signed by T.S., each of which were secured by deeds of trust on 24 of T.S.'s properties.[1] T.S. signed the loan documents, which included the pertinent promissory notes and deeds of trust. Each loan contained a cross-default and cross-collateralization provision. T.S. would later assert that he did not understand the documents, that they conflicted with earlier discussions, and that someone from Capital or the title company should have been at the closing to explain the terms to him.

**¶3**          T.S. defaulted in July 2015, and Capital accelerated each of his loans. He filed for Chapter 11 bankruptcy protection in October 2015. *See*

---

[1]          T.S. obtained the following loans from Capital: (1) $3,300,000, secured by 22 rental properties in the Phoenix metro area; (2) $360,000, secured by the sole Sedona property; (3) $760,000, a refinance of the $360,000 loan, secured by both the Sedona property and what was apparently T.S.'s residence ("79th Avenue"); and (4) $200,000, secured in a junior position on the 22 rental properties.

*In re Sakthiveil*, No. 2:15-bk-12978-BKM (Bankr. D. Ariz. filed Oct. 9, 2015). The bankruptcy court found that T.S. grossly mismanaged the properties that secured the loans. *Sakthiveil I*, 1 CA-CV 17-0228 at *1, ¶ 3. In April 2016, the bankruptcy court lifted the automatic stay provision of 11 U.S.C. § 362 so the superior court could appoint a receiver to take possession of and foreclose on T.S.'s collateral properties. *Id.* After discussions with Capital over his potential ability to bring in investors to pay off the loans, T.S. voluntarily dismissed his bankruptcy.

¶4 The superior court appointed a receiver, but several weeks later T.S. requested that the receivership be dissolved, or alternatively, that the court issue an order addressing alleged mismanagement of the properties. The court denied both requests and a short time later 23 of the properties were sold at trustee's sales. Those sales, along with an agreed-upon sale of the 79th Avenue property to a third party, grossed a total of $5,475,520. A deficiency of at least $307,764.50 remained, but Capital decided not to pursue a deficiency judgment.

¶5 T.S. then moved to reinstate his bankruptcy and "reverse" the foreclosures, stating that his dismissal of the Chapter 11 proceedings was in reliance on a promise by Capital to delay foreclosure and accept offers from investors T.S. had lined up to pay off the outstanding loans. The bankruptcy court denied his motion, finding that the proposed sales prices would not satisfy the entire outstanding debt and that T.S.'s claim of reliance on a promise by Capital to forego foreclosures was not credible.

¶6 Several weeks later, T.S. filed a motion to reverse the foreclosures. The superior court denied his motion and he appealed to this court. We affirmed the court's orders appointing the receiver and denying T.S.'s motion to set aside the trustee's sales. S*akthiveil I*, 1 CA-CV 17-0228 at *3, ¶ 16.

¶7 Before we issued our decision in *Sakthiveil I*, T.S. filed the complaint in this case, alleging breach of contract, breach of the duty of good faith and fair dealing, fraud, and consumer fraud against Capital—all arising from the same underlying facts and documents. T.S. also claimed that Capital's loans were "illegal in many respects," contending, *inter alia*, (1) the loan documents did not have all the financial terms previously agreed to; (2) Capital required him to use his personal home as collateral, contrary to an earlier agreement; (3) Capital failed to work with him in the bankruptcy action; (4) Capital sold the properties for more than they credited him for; (5) he did not understand the cross-collateralization terms; and (6) the *Dodd Frank Act*, 12 U.S.C. § 5536, had been violated.

3

**¶8** Capital filed an answer, followed by a motion for summary judgment as to all claims. The motion included copies of the signed documents and the declaration of its chief operating officer, Noah Brocious, authenticating those documents. Capital asserted that T.S.'s claims were "contrary to signed loan documents and controlling legal principles," pointing to the "unambiguous written contract terms" that T.S. "consented to" by signing the documents.

**¶9** T.S. responded to the motion for summary judgment and the statement of facts. He included several exhibits in support of his contravening statement of facts. Finding no genuine dispute of material fact, the superior court ruled in favor of Capital on all four counts. The court also awarded attorneys' fees to Capital and T.S. timely appealed.

## DISCUSSION

**¶10** T.S. argues the superior court erred in granting summary judgment and provides a laundry list of purported errors. The errors primarily concern alleged conflicts between what the signed documents admitted into evidence explicitly say and purported representations made in advance of the loans by Capital or T.S.'s broker. T.S. also questions whether res judicata bars any of his claims.

**¶11** Summary judgment is properly granted when no genuine dispute of material fact exists, and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a). We view the facts in the light most favorable to T.S., and determine de novo whether genuine issues of material fact existed and whether the superior court properly applied the law. *See Slaughter v. Maricopa County*, 227 Ariz. 323, 325, ¶ 7 (App. 2011); *Eller Media Co. v. City of Tucson*, 198 Ariz. 127, 130, ¶ 4 (App. 2000). Litigants representing themselves are held to the same standard as if they were represented by counsel. *See Smith v. Rabb*, 95 Ariz. 49, 53 (1963).

### A. Absence of Material Disputed Facts

**¶12** The material facts underlying these claims are relatively simple. T.S. signed loan documents with express legal terms that allowed Capital to foreclose on his real property in the event of a default. He defaulted, and Capital foreclosed on all collateral except the 79th Avenue property. T.S. asserts the superior court misunderstood the underlying factual circumstances. He argues there were "numerous material facts at issue" and credibility determinations that should have been presented to a

jury. However, T.S. does not dispute that he signed the loan documents, which set forth the loan terms that were later enforced when he defaulted.[2]

¶13      Although T.S.'s contravening statement of facts broadly addressed each of Capital's assertions, it contained little or no relevant supporting evidence. T.S.'s affidavit centers on circumstances that are irrelevant because they (1) occurred prior to the signing of the loan documents, or (2) have no bearing on a genuine issue of material fact.[3] The other pieces of evidence he offered were either unrelated to a genuine fact in dispute (such as Exhibit 2—an affidavit from his ex-wife) or inconclusive (such as Exhibit 7—text messages).[4]

¶14      A party must indicate the facts that preclude summary judgment in favor of the movant. Ariz. R. Civ. P. 56(c)(3)(B)(ii). Moreover, these facts must be supported by admissible evidence. Ariz. R. Civ. P.

---

[2]      While T.S. *generally* does not dispute he signed loan documents, in places he seems to allege the Capital copies, among other things, "do not match his signature[s]." Because he did not previously contest the authenticity of the documents, T.S. has waived this issue. *See Airfreight Express, Ltd., v. Evergreen Air Ctr.*, 215 Ariz. 103, 112, ¶ 26 (App. 2007).

[3]      For example, T.S.'s statements that he had previously refinanced mortgages on more favorable terms is not evidence of a genuine issue of material fact—it does not change that he also signed these loan documents. "A 'genuine' issue is one that a reasonable trier of fact could decide in favor of the party adverse to summary judgment on the available evidentiary record." *Martin v. Schroeder*, 209 Ariz. 531, 534, ¶ 12 (App. 2005).

[4]      In his complaint, T.S. alleged that Capital agreed the 79th Avenue property, his personal residence, would not be included on any of the loans but that Capital changed the nature of the loans, thereby "requiring [his] home to be used as collateral." T.S. has not directed us to any evidence in the record showing that Capital agreed not to use that property as collateral; the record confirms just the opposite based on the agreements T.S. signed in that the loan documents for the $760,000 plainly stated the 79th Avenue property would be used as collateral, along with the Sedona property. T.S. also signed an agreement certifying he would not be occupying the 79th Avenue property and the loan was for a commercial purpose. On appeal, he appears to suggest he was wrongfully denied a homestead exemption for the 79th Avenue property. *See* A.R.S. § 33-1103(A). But nothing in our record shows T.S. raised this issue in the superior court. It is therefore waived. *See Airfreight Express,* 215 Ariz. at 112, ¶ 26.

56(c)(4), (5).  T.S.'s own self-serving statements are insufficient to prevent summary judgment.  *See Florez v. Sargeant*, 185 Ariz. 521, 526 (1996).  "Allegations in pleadings are not evidence; they are statements of facts which the pleader must prove unless admitted by the opposing party." *Bank of Yuma v. Arrow Constr. Co.*, 106 Ariz. 582, 585 (1971).  T.S. offered no admissible evidence controverting Capital's material facts; therefore, the facts submitted by Capital are presumed to be true.  *See Tilley v. Delci*, 220 Ariz. 233, 237, ¶ 11 (App. 2009).  Under these circumstances, the superior court properly granted summary judgment.  *See* Ariz. R. Civ. P. 56(e).

### B.      Binding Loan Documents

**¶15**         "A general principle of contract law is that where parties bind themselves by a lawful contract and the terms of the contract are clear and unambiguous, a court must give effect to the contract as written." *Estes Co. v. Aztec Constr., Inc.*, 139 Ariz. 166, 168 (App. 1983).  The superior court found that even if it were true that T.S. did not understand the documents, he could not avoid summary judgment.  *See Pac. W. Const. Co. v. Indus. Com'n of Ariz.*, 166 Ariz. 16, 20 (App. 1990) ("Failure to read an agreement reduced to writing and signed by a party precludes recovery for fraud or misrepresentation concerning oral statements made about the contents of the agreement."); *Nationwide Res. Corp. v. Massabni*, 134 Ariz. 557, 565 (App. 1982) ("The contract clearly referred to a written document which apparently the [defendants] did not read.  Under such circumstances they cannot claim the defense of mistake.").

**¶16**         The superior court's legal analysis is correct.  While the transactions may have been "large and complicated," T.S. cannot properly complain of changes in the terms of the loan documents where those changes, if any, were in the documents he signed.  The burden was on T.S. to secure advice on the documents, if necessary, or to be bound to the terms. *See Teran v. Citicorp Person-to-Person Fin.Ctr.*, 146 Ariz. 370, 375 (App. 1985).  Although the financial loss suffered by T.S. was severe, the assertions he makes do not create genuine issues of material fact preventing summary judgment.

### C.      Asserted Legal Errors/Preclusion

**¶17**         The superior court found that T.S.'s complaint impermissibly attempted to relitigate mismanagement by the receiver, alleged promises in bankruptcy court leading to wrongful foreclosure, and the applicability of A.R.S. § 33-811(C), which states that a trustor waives all objections to a trustee's sale by failing to obtain an injunction.  T.S. asserts that *Sakthiveil I*

suggested "that any underlying claims of misconduct would be addressed in a different forum"—such as this new complaint. He therefore disputes that any of his claims in this case are precluded because they were not litigated beyond "the immediate Receivership issues" and whether A.R.S. § 33-811(C) applied to the properties in receivership.

**¶18**         *Sakthiveil I* addressed two issues: (1) his receivership claims, including alleged mismanagement, and (2) the applicability of A.R.S. § 33-811(C). Analyzing the trustee sales, we held:

> In any event, Sakthiveil waived any objection to the trustee's sales by failing to enjoin the sales. *See* A.R.S. § 33-811(C) (2018). "Where, as here, a trustee's sale is completed, a person subject to § 33-811(C) cannot later challenge the sale based on pre-sale defenses or objections." *BT Capital*, 229 Ariz. at 301, ¶ 11.

*Sakthiveil I*, 1 CA-CV 17-0228 at * 3, ¶ 15. The decision is final in *Sakthiveil I*, as T.S. did not file a petition for review with our supreme court.

**¶19**         Because "[p]ublic policy is against deciding cases piecemeal," appeals are generally "limited to final judgments which dispose of all claims and all parties." *Musa v. Adrian*, 130 Ariz. 311, 312 (1981); *see* A.R.S. § 12-2101(A). "The doctrine of res judicata will preclude a claim when a former judgment on the merits was rendered by a court of competent jurisdiction and the matter now in issue between the same parties or their privities was, or might have been, determined in the former action." *Hall v. Lalli*, 194 Ariz. 54, 57, ¶ 7 (1999) (citations omitted). Therefore, the receivership issues, any promise to delay foreclosure, and the applicability of A.R.S § 33-811(C) have been conclusively decided and are not open for re-litigation.

### D.    Attorneys' Fees Award

**¶20**         In the superior court, Capital requested attorneys' fees in the amount of $46,245, citing the fee-shifting provisions of the loan documents and A.R.S. § 12-341.01. T.S. contends that because the case was resolved without discovery, Capital's fee request was excessive, and the court should have considered all relevant factors, including those listed in *Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 570 (1985). But the court's detailed minute entry specifically addressed the *Warner* factors. And even though T.S. did not object with specificity to any particular charges, the court reduced the award by more than half, to $22,395.50, based on instances of vague billing, an unsuccessful motion, and the extreme hardship an award

would cause T.S. We find no abuse of discretion. *See id.* at 570–71 (recognizing trial judges have broad discretion to determine fee requests).

## CONCLUSION

**¶21** We affirm the superior court's grant of summary judgment and the related award of attorneys' fees. Pursuant to the loan documents, we award Capital its reasonable attorneys' fees and costs incurred on appeal subject to compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED: AA