FILED BY CLERK

JUN 30 2006

COURT OF APPEALS
DIVISION TWO

IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| JANE ANDRESANO and RALPH ANDRESANO, wife and husband, | ) ) ) | 2 CA-CV 2005-0151 DEPARTMENT A |
| Plaintiffs/Appellants, | ) ) | O P I N I O N |
| v. | ) ) | |
| THE COUNTY OF PIMA, a body politic, and PIMA COUNTY DEPARTMENT OF PUBLIC WORKS, a public entity, | ) ) ) ) | |
| Defendants/Appellees. | ) ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C-20035291

Honorable Deborah Bernini, Judge

AFFIRMED

Harold Hyams & Associates, P.C.
  By Michael J. Kuborn                                                    Tucson
                                              Attorneys for Plaintiffs/Appellants

Barbara LaWall, Pima County Attorney
  By James M. Wilkes                                                     Tucson
                                              Attorneys for Defendants/Appellees

P E L A N D E R, Chief Judge.

¶1      In this personal injury-premises liability action, we are again required to interpret Arizona's recreational use immunity statute, A.R.S. § 33-1551. *See, e.g., Armenta v. City of Casa Grande*, 205 Ariz. 367, 71 P.3d 359 (App. 2003); *Herman v. City of Tucson*, 197 Ariz. 430, 4 P.3d 973 (App. 1999); *Prince v. City of Apache Junction*, 185 Ariz. 43, 912 P.2d 47 (App. 1996). Plaintiff/appellant Jane Andresano and her husband appeal from the trial court's grant of summary judgment in favor of defendant/appellee Pima County. Contrary to Andresano's argument, we hold that the trial court properly applied § 33-1551 to the facts presented and correctly found the county not liable as a matter of law under that statute. Therefore, we affirm the judgment.

**BACKGROUND**

¶2      Although the pertinent facts are essentially undisputed, on appeal from a summary judgment, we view all facts and reasonable inferences therefrom in the light most favorable to the party against whom judgment was entered. *See Prince*, 185 Ariz. at 45, 912 P.2d at 49. During the annual AIDS Walk held by the Southern Arizona AIDS Foundation (SAAF) at Rillito Park in October 2002, Jane Andresano slipped and fell in a drainage culvert in the infield of the Rillito Downs Race Track, breaking her ankle. She was serving as chaperone for students from her daughter's high school but was also going to participate in the walk herself.

¶3      Pima County owns Rillito Park and the racetrack that lies within it. The county allows many organizations to use the racetrack area through a cooperative use

2

agreement executed by the user and the county. SAAF entered into one such agreement for its annual AIDS Walk in 2002. Pursuant to the agreement, the county granted a license to SAAF "for the special use" on October 20, 2002, of certain premises. The premises included the racetrack's infield, grandstands, and parking lot as well as the Rillito River Park system from Rillito Park to Flowing Wells Road.

¶4 In exchange, the agreement required SAAF to pay the county a $950 fee to use the premises. That fee included $350 for use of the racetrack infield and $300 each for use of the parking lot and grandstands. The county also required a $950 security deposit. According to the uncontroverted affidavit of the county's contract specialist, the county assessed the $950 fee "to help defray the costs of maintaining the facility," and that same, "scheduled" fee was charged to all users who entered into a cooperative use agreement. The county collected $30,993.50 in user fees for the Rillito Park facility during the 2002-2003 fiscal year and spent $146,824 that year in maintenance and upkeep costs for the facility.

¶5 Andresano did not personally pay a fee to use the county premises or to participate in the AIDS Walk. After her injury, Andresano filed this action, alleging that the county had negligently failed to maintain the property or warn her of "dangerous conditions [at the park]," specifically, "the presence of an unprotected culvert . . . on the premises." The county moved for summary judgment, arguing § 33-1551 applied and immunized it from liability. The trial court granted the motion, noting that Andresano's lack of payment of a fee entitled the county to judgment. It further concluded that "access to the park was not

3

limited or restricted to any special group, the user fee was minimal and not a revenue generating fee, and . . . the park operations on October 20, 2002 were governmental, and not proprietary, in nature." The court also ruled that "[t]he use to which Rillito Park was put on October 20, 2002, appears in all respects to be the type of use that the legislature envisioned when it passed the [recreational use] statute." This appeal followed.

## DISCUSSION

¶6 Andresano contends the trial court erred in granting summary judgment in favor of the county, arguing her "right of action was incorrectly abrogated by the trial court's narrow interpretation of the recreational use statute." In reviewing a grant of summary judgment, "[w]e determine de novo whether any genuine issues of material fact exist and whether the trial court erred in applying the law." *Armenta*, 205 Ariz. 367, ¶ 5, 71 P.3d at 361. "We also review de novo whether the recreational use immunity statute applies to this case . . . ." *Id.; see also Herman*, 197 Ariz. 430, ¶ 5, 4 P.3d at 975 (we review de novo statutory interpretation issues). And, "[b]ecause the statute appears to limit common-law liability, 'we must construe it strictly to avoid any overbroad statutory interpretation that would give unintended immunity and take away a right of action.'" *Armenta*, 205 Ariz. 367, ¶ 5, 71 P.3d at 361, *quoting Smith v. Ariz. Bd. of Regents*, 195 Ariz. 214, ¶ 9, 986 P.2d 247, 249 (App. 1999); *see also Herman*, 197 Ariz. 430, ¶ 12, 4 P.3d at 976.

¶7 Section 33-1551(A) provides:

A public or private owner, easement holder, lessee or occupant of premises is not liable to a recreational or

4

educational user except upon a showing that the owner, easement holder, lessee or occupant was guilty of wilful, malicious or grossly negligent conduct which was a direct cause of the injury to the recreational or educational user.

Andresano does not assert that the county acted wilfully, maliciously, or in a grossly negligent manner. Therefore, if the statute applies, the county is immune from liability in an action for simple negligence. *See Armenta*, 205 Ariz. 367, ¶ 24, 71 P.3d at 365.

¶8 Andresano first maintains "[t]he trial court erred when it determined that the County's operation and maintenance of the Rillito Downs Facility was governmental rather than proprietary in nature." The county responds that "the discussion of governmental versus proprietary function is immaterial" under the recreational use statute and that the statute "contains its own internal set of requirements . . . without the need for further analysis." We agree with the county on this point.

¶9 As Andresano correctly notes, our supreme court applied the governmental-versus-proprietary test in *Dickey v. City of Flagstaff*, 205 Ariz. 1, 66 P.3d 44 (2003). But it did so in the context of a constitutional challenge not raised here.[1] Although the common law might have differentiated between governmental and proprietary functions, the

[1]The court in *Dickey* held that, "because [the plaintiffs] would have had no action when the anti-abrogation provision [in article XVIII, § 6 of the Arizona Constitution] was adopted, the limited immunity afforded to the City of Flagstaff by the recreational use statute did not wrongfully abrogate [the plaintiffs'] right to sue the City for negligence." 205 Ariz. 1, ¶ 23, 66 P.3d at 49. No such constitutional issue is raised here. And the dispositive issue in this case—the scope and effect of a payment made by an entity other than the recreational user/plaintiff—was neither presented nor addressed in *Dickey*.

5

recreational use statute draws no such distinction, nor do we in interpreting and applying that law. Therefore, we do not address the propriety of the trial court's ruling that "the park operations on October 20, 2002 were governmental, and not proprietary, in nature."

¶10        We now turn to the issue we view as dispositive: whether Andresano was a "recreational user" as defined in § 33-1551(C)(4) at the time of her accident.[2] As amended in 1998, *see* 1998 Ariz. Sess. Laws, ch. 22, § 1, that subsection provides:

> "Recreational user" means a person to whom permission has been granted or implied without the payment of an admission fee or any other consideration to travel across or to enter upon premises to hunt, fish, trap, camp, hike, ride, exercise, swim or engage in similar pursuits. The purchase of a state hunting, trapping or fishing license is not the payment of an admission fee or any other consideration as provided in this section. A nominal fee that is charged by a public entity or a nonprofit corporation to offset the cost of providing the educational or recreational premises and associated services does not constitute an admission fee or any other consideration as prescribed by this section.

§ 33-1551(C)(4). The 1998 amendment added the last sentence to that subsection. 1998 Ariz. Sess. Laws, ch. 22, § 1.

---

[2]Andresano does not contend that the Rillito Park facility falls outside the definition of "premises" in § 33-1551(C)(3). *See Armenta v. City of Casa Grande*, 205 Ariz. 367, ¶¶ 7-9, 71 P.3d 359, 362 (App. 2003); *see also Prince v. City of Apache Junction*, 185 Ariz. 43, 46, 912 P.2d 47, 50 (App. 1996). Nor does she deny having entered the premises to "exercise" or "engage in similar pursuits" at the time of her injury, within the meaning of § 33-1551(C)(4). *See Herman v. City of Tucson*, 197 Ariz. 430, ¶ 19, 4 P.3d 973, 978 (App. 1999); *see also Prince*, 185 Ariz. at 46, 912 P.2d at 50.

6

**¶11**     As Andresano points out, "[t]he 'admission fee or any other consideration' clause contained in A.R.S. § 33-1551(C)(4) provides an exception to the recreational use statute." And, as she also correctly notes, "the payment of an admission fee or any other consideration by a user of the public premises negates the public entity's immunity [as to that user] unless the fee is considered nominal and, if nominal, is charged to offset the cost of providing the premises and associated services."

**¶12**     The parties devote much of their argument to the thorny issue of whether the $950 user fee SAAF paid to the county was "[a] nominal fee that [was] charged by [the county] to offset the cost of providing the . . . recreational premises and associated services." § 33-1551(C)(4). But we focus first on the question of whether Andresano was "a person to whom permission [was] granted or implied without the payment of an admission fee or any other consideration to . . . enter upon [the Rillito Park] premises." *Id*. And, more particularly, we examine whether the user fee SAAF paid qualifies as the type of "admission fee" or "other consideration" to which subsection (C)(4) refers, thereby potentially removing Andresano from "recreational user" status. *See Herman*, 197 Ariz. 430, ¶ 8, 4 P.3d at 976 ("The statute applies only if [the plaintiff] was a recreational user.").

**¶13**     Andresano contends, without "belabor[ing] the issue," that "the trial court determined that the $950.00 user fee paid by SAAF would apply to [her] as an agent of SAAF at the time of her injury." But that contention misconstrues the trial court's ruling. What the court actually stated was: "[T]o the extent that the Court adopts Plaintiff's claim

7

that she was an 'agent' of SAAF, a brief look at the nature of the user fee is appropriate." Immediately before that, however, the trial court stated: "[Andresano] does not dispute that she did not pay any sort of admission fee to enter the park or an entry fee to participate in the [AIDS Walk] event. These facts alone seem to warrant judgment in Defendant's favor." We agree and, for the reasons set forth below, affirm summary judgment on that ground. *See Rowland v. Great States Ins. Co.*, 199 Ariz. 577, ¶ 6, 20 P.3d 1158, 1162 (App. 2001) (we will affirm trial court's summary judgment ruling if it is correct on any ground).

¶14 Andresano relies on *Prince* for the proposition that the user fee SAAF paid applies to her "individually even though [s]he did not personally pay the fee." We are not persuaded. In *Prince*, the plaintiff was a member of a trucking company softball team. "The participation of plaintiff's team and its members, including plaintiff, on the accident date depended on the team's required payment of a $250 entry fee to the city." 185 Ariz. at 46, 912 P.2d at 50. The trucking company that sponsored the plaintiff's team had "made that payment with the 'understanding that this entry fee was a requirement of entering a team into the league and to use the league facilities.'" *Id*. Payment of the entry fee in *Prince* not only "entitled plaintiff's team to reserved, 'priority use' of the softball field at the time of plaintiff's accident" but also helped cover the costs of field preparation, maintenance, and lighting. *Id.* On those facts, we concluded "the permission granted to plaintiff 'to enter upon' the softball field to 'exercise . . . or engage in similar pursuits' was *not* 'without the payment of an admission fee or other consideration,' § 33-1551(B)(3), and the trial court's

8

implicit 'conclusion of "no charge" was in error.'" 185 Ariz. at 46, 912 P.2d at 50 (emphasis and alteration in *Prince*).

¶15 We noted in *Prince* that "'the "charge" ("admission price or fee") exception [in current § 33-1551(C)(4)] "must be given the broadest reading that is within the fair intendment of the language used."'" 185 Ariz. at 45, 912 P.2d at 49, *quoting Johnson v. Rapid City Softball Ass'n*, 514 N.W.2d 693, 696 (S.D. 1994). We further stated: "[I]f an admission fee or other consideration was paid, at least in part, to enter upon premises to engage in any of the defined recreational activities, that is sufficient to exclude one from recreational user status." *Id*. And, we also noted, § 33-1551 "does not specifically require that the 'admission fee or other consideration' be paid by the individual claimant rather than by a team to engage in a sporting event at a particular site in the park." 185 Ariz. at 46 n.5, 912 P.2d at 50 n.5. Rather, we observed, "'[a] fee does not necessarily have to be paid by the injured party [her]self to take a case outside the recreational user statute so long as someone in the plaintiff's party has paid a fee to utilize the overall benefits.'" *Id., quoting Reed v. City of Miamisburg*, 644 N.E.2d 1094, 1095 (Ohio Ct. App. 1993).

¶16 We find *Prince* distinguishable and unsupportive of Andresano's contention that SAAF's payment of the $950 user fee constituted "an admission fee or any other consideration" paid on her behalf.[3] § 33-1551(C)(4). Andresano testified in her deposition

---

[3]Our holding in *Prince* that the plaintiff there had not been a "recreational user" at the time of his accident was based on "the particular facts of [that] case." 185 Ariz. at 46, 912 P.2d at 50.

9

that she had not "paid an entry fee in order to participate in the walk." And the record does not suggest, let alone establish, that she was an agent or employee of SAAF or otherwise held even a semiofficial position in that organization at any time.[4] Unlike the plaintiff in *Prince*, Andresano was not a member of any team for which payment of a fee was required to "'enter[] a team into [a] league and to use the league facilities.'" 185 Ariz. at 46, 912 P.2d at 50. Rather, she was merely one of many community members whom SAAF invited to participate in its widely publicized, fund-raising event, and the fee SAAF paid was not made for the primary purpose of permitting her to participate in the walk or to utilize the county facilities.

¶17 In contrast, the trucking company sponsor in *Prince* paid the entry fee solely on behalf of the plaintiff's team so it could participate in the league and use the softball field for games. Thus, there was a direct correlation between the payor (the trucking company sponsor), the plaintiff (as a member of the sponsored softball team), and the purpose for which payment was made (to entitle plaintiff and his team to participate in the softball league and to "reserved, 'priority use' of the softball field at the time of plaintiff's accident"). *Id.* at 46, 912 P.2d at 50. In other words, the entry fee was paid on behalf of

---

[4]"'[A]n agent is "one who acts on behalf of another."'" *Barlage v. Valentine*, 210 Ariz. 270, ¶ 16, 110 P.3d 371, 376 (App. 2005), *quoting Se. Ariz. Med. Ctr. v. Ariz. Health Care Cost Containment Sys.*, 188 Ariz. 276, 282, 935 P.2d 854, 860 (App. 1996) (alteration in *Se. Ariz. Med. Ctr.*). Andresano asserted below that "payment of the 'user's fee' by SAAF must be extended to [her]" because she served as a "volunteer fund raiser and was present within the Rillito Downs facility at the invitation of and on behalf of SAAF." But no facts of record support those assertions.

10

the team to directly and exclusively benefit a specific, small group to which the plaintiff belonged.

¶18 The same cannot be said in this case. The user fee SAAF paid was for its benefit, that is, to obtain a license for special use of the Rillito Park premises for its own fund-raising purposes on the date specified. It then became the "occupant" of the premises. § 33-1551(A). Unlike in *Prince*, no direct relationship existed between SAAF, as payor, and Andresano. And the user fee the county charged SAAF was not paid on behalf of, or to directly benefit, her. *See, e.g., Casas v. United States*, 19 F. Supp. 2d 1104, 1108 (C.D. Cal. 1998) (rejecting plaintiff's "broad reading of the recreational use statute" that "because some people" had paid a registration fee, she and others "were brought within the [statute's] consideration exception"); *Whooley v. Commonwealth*, 783 N.E.2d 461, 462-63 (Mass. App. Ct. 2003) (whether other recreational users paid fee for their own use of hockey rink not determinative, but rather, issue was "whether the plaintiff paid a fee to the owner of the facility in exchange for her use of the premises"); *Garreans v. City of Omaha*, 345 N.W.2d 309, 314 (Neb. 1984) (plaintiffs deemed "nonpaying, recreational users" when user fees were not paid by them or specifically on their behalf); *cf. Saari v. Winter Sports, Inc.*, 64 P.3d 1038, 1042 (Mont. 2003) (although "it is not necessary for the ultimate user . . . to be the one who furnishes the valuable consideration to the property owner for the use of the property, it is necessary that the consideration be given 'to create access to the premises *for*

11

the ultimate user.'"), *quoting Simchuk v. Angel Island Community Ass'n*, 833 P.2d 158, 162 (Mont. 1992) (emphasis added in *Saari*).

¶19      Moreover, the user fee the county charged SAAF was not paid as "an admission fee" or "other consideration" for purposes of granting permission to Andresano to enter or use the premises.[5]  Rather, the uncontroverted facts established that the "scheduled fees" only applied to "persons or entities who enter into Cooperative Use Agreements with Pima County," i.e., SAAF.

¶20      Viewing the statutory exception for "an admission fee or any other consideration" broadly, as we must, we have no reason to believe the legislature intended that exception to apply when the connection between the payment and the plaintiff is as attenuated as it is here.  Under these circumstances, we conclude Andresano was a "recreational user" because her permitted use of the Rillito Park facilities was "without the payment of an admission fee or any other consideration" by her or on her behalf.  § 33-1551(C)(4).  And, because the trial court's entry of summary judgment on that ground was proper, we do not address the question of whether the $950 user fee SAAF paid was "nominal" within the meaning of the 1998 amendment to § 33-1551(C)(4).

---

    [5]We note that, to the extent Andresano required permission to enter the Rillito Park premises on the accident date, such permission was requested from and granted by SAAF, not the county.  Andresano avowed that she was required to register with SAAF before participating in the walk.  And, as she repeatedly asserts, the cooperative use agreement between SAAF and the county implied that "SAAF would have exclusive use of the facilities on that day" and that "access and use of the park was only held open to SAAF and those members of the general public to whom SAAF granted entry."

**¶21** In sum, we agree with the trial court that Andresano "was a recreational user of the Pima County property where she was injured and . . . is precluded from seeking damages for simple negligence from Pima County pursuant to . . . § 33-1551." Accordingly, the court properly granted summary judgment in favor of the county.

## DISPOSITION

**¶22** The judgment of the trial court is affirmed.


_____

JOHN PELANDER, Chief Judge

CONCURRING:


_____

JOSEPH W. HOWARD, Presiding Judge


_____

GARYE L. VÁSQUEZ, Judge