IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO



THOMAS MACKINNEY, a married
man, individually,

　　　　　　Plaintiff/Appellee,

　　　　　v.

CITY OF TUCSON, a body politic,

　　　　　Defendant/Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

2 CA-CV 2012-0125
DEPARTMENT B

O P I N I O N

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20108504

Honorable Ted B. Borek, Judge

VACATED AND REMANDED

---

The Redhair Law Group, P.C.
　By Jack I. Redhair and Michael Redhair
　　　　　　　　　　　　　　　　　　Tucson
Attorneys for Plaintiff/Appellee

Michael G. Rankin, Tucson City Attorney
　By Viola Romero-Wright
　and Michael W.L. McCrory
　　　　　　　　　　　　　　　　　　Tucson
Attorneys for Defendant/Appellant

---

E S P I N O S A, Judge.

**¶1**　　　　In this personal injury action, defendant/appellant City of Tucson appeals

from a judgment in favor of plaintiff/appellee Thomas MacKinney. The city argues the

trial court erred in denying its motion for summary judgment, asserting that Arizona's recreational-use immunity statute, A.R.S. § 33-1551, barred MacKinney's negligence claim as a matter of law. For the following reasons, we vacate and remand.

**Factual Background and Procedural History**

¶2 In reviewing a summary-judgment ruling, we view the facts in the light most favorable to the nonmoving party. *City of Phoenix v. Yarnell*, 184 Ariz. 310, 312 n.2, 909 P.2d 377, 379 n.2 (1995). In November 2009, MacKinney and his son Matthew were playing golf at a city-owned course when MacKinney slipped and fell, injuring, *inter alia*, his lower leg and ankle. MacKinney sued the city and the golf course, alleging the walkway approaching the seventh tee was "steep, narrow, [and] unreasonably dangerous" and had been "negligently designed, constructed and/or maintained in such a manner as to constitute an unreasonably dangerous condition."

¶3 The city moved for summary judgment, arguing it was not liable for MacKinney's injuries because it was immune under Arizona's recreational-use immunity statute. *See* § 33-1551. MacKinney opposed the motion, asserting the city was not immune because the golf course was not a "premises" protected under the statute and he was not a "recreational user" as defined by the statute because he had paid an admission fee for purposes of entering and using the course. The trial court denied the city's motion, initially without explanation, but subsequently issued two minute entries clarifying that the denial was based on its conclusion that a golf course is not included in the statutorily enumerated "premises" implicating recreational-use immunity and that an

2

issue of fact existed as to whether the fee MacKinney had paid was a "nominal" one under the statute.

¶4        The matter proceeded to trial, and the jury found in favor of MacKinney, determining his damages to be $180,000 but allocating seventy percent of the fault to him such that the court entered final judgment against the city in the amount of $54,000.  We have jurisdiction over the city's appeal pursuant to A.R.S. §§ 12-120.21(A)(1) and 12-2101(A)(1).

**Discussion**

¶5        "Generally, the denial of a summary judgment motion is not reviewable on appeal from a final judgment entered after a trial on the merits."  *John C. Lincoln Hosp. & Health Corp. v. Maricopa Cnty.*, 208 Ariz. 532, ¶ 19, 96 P.3d 530, 537 (App. 2004).  If the denial was based on a point of law, however, an appellate court may review the ruling as part of its review of the final judgment on appeal.  *Hourani v. Benson Hosp.*, 211 Ariz. 427, ¶ 4, 122 P.3d 6, 9 (App. 2005).  In this case, the trial court's denial of the motion was based on its conclusion that the golf course did not fall within the definition of "premises" protected under the recreational-use immunity statute, a purely legal determination as there was no dispute that the injury had occurred on a city-owned golf course and the material question was whether that property qualified as a "premises" protected under the statute.  Because the trial court ruled the golf course was not a protected premises and the city was therefore not immune, the immunity issue was eliminated from trial.  Thus, the ruling was an "intermediate order[] involving the merits

3

of the action and necessarily affecting the judgment" under review. A.R.S. § 12-2102(A); *see also Pepsi-Cola Metro. Bottling Co. v. Romley*, 118 Ariz. 565, 568, 578 P.2d 994, 997 (App. 1978) (§ 12-2102 proper basis for court of appeals' review). Our consideration of the court's summary-judgment ruling is therefore appropriate as part of our review of the final judgment.[1]

**¶6**     Summary judgment is proper only when "'there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.'" *Villa de Jardines Ass'n v. Flagstar Bank, FSB*, 227 Ariz. 91, ¶ 5, 253 P.3d 288, 292 (App. 2011), *quoting Airfreight Express Ltd. v. Evergreen Air Ctr., Inc.*, 215 Ariz. 103, ¶ 19, 158 P.3d 232, 239 (App. 2007). Summary judgment is disfavored in negligence actions but may be granted "when there is no dispute as to any material facts, only one inference can be drawn from those facts, and the moving party is entitled to judgment as a matter of law." *McLeod ex rel. Smith v. Newcomer*, 163 Ariz. 6, 8, 785 P.2d 575, 577 (App. 1989). We

---

[1]Although the trial court initially believed there was a question of fact regarding whether MacKinney was a recreational user as that term is defined by § 33-1551, this does not preclude our review because the issue was never reached due to the court's ruling on the "premises" question. *See Navajo Freight Lines, Inc. v. Liberty Mut. Ins. Co.*, 12 Ariz. App. 424, 428, 471 P.2d 309, 313 (1970) (suggesting appellate review of summary-judgment denial appropriate if clear "the denial was made strictly on a point of law, and that because of such ruling the losing party thereafter was precluded from offering evidence or urging the point at the time of the trial on the merits"), *citing Gumm v. Combs*, 302 S.W.2d 616, 617 (Ky. Ct. App. 1957) (where basis for denial of summary judgment a matter of law, review of denial proper as part of review from final judgment because legal question "may not be again presented or retried"); *cf. Cnty. of La Paz v. Yakima Compost Co.*, 224 Ariz. 590, n.2, 233 P.3d 1169, 1175 n.2 (App. 2010) (declining to review denial of summary judgment in view of factual issues later tried to jury and same legal conclusions underlying trial court's ruling on motion for judgment as a matter of law).

review *de novo* a trial court's summary-judgment ruling. *Hourani*, 211 Ariz. 427, ¶ 4, 122 P.3d at 9.[2]

**¶7** The applicability of the recreational-use immunity statute is a question of law, subject to *de novo* review. *Andresano v. Cnty. of Pima*, 213 Ariz. 65, ¶ 6, 138 P.3d 1192, 1194 (App. 2006); *see also Prince v. City of Apache Junction*, 185 Ariz. 43, 45, 912 P.2d 47, 49 (App. 1996) (issues of statutory interpretation reviewed *de novo*). In analyzing the statute's applicability, we are not bound by a trial court's conclusions of law. *See Gary Outdoor Adver. Co. v. Sun Lodge, Inc.*, 133 Ariz. 240, 242, 650 P.2d 1222, 1224 (1982). Our primary goal in interpreting a statute is to give effect to the legislature's intent, and the language of a statute is the most reliable evidence of that intent. *Walker v. City of Scottsdale*, 163 Ariz. 206, 208-09, 786 P.2d 1057, 1059-60 (App. 1989). Because the statute limits common-law liability, however, we must strictly construe its language "'to avoid any overbroad statutory interpretation that would give unintended immunity and take away a right of action.'" *Andresano*, 213 Ariz. 65, ¶ 6, 138 P.3d at 1194, *quoting Armenta v. City of Casa Grande*, 205 Ariz. 367, ¶ 5, 71 P.3d 359, 361 (App. 2003); *see also Walker*, 163 Ariz. at 211, 786 P.2d at 1062; *Schilling v. Embree*, 118 Ariz. 236, 239, 575 P.2d 1262, 1265 (App. 1977). For the recreational-use

---

[2]In *Samaritan Health System v. Superior Court*, 194 Ariz. 284, ¶ 11, 981 P.2d 584, 588 (App. 1998), this court reviewed a denial of summary judgment for abuse of discretion. *Accord Salt River Valley Water Users' Ass'n v. Superior Court*, 178 Ariz. 70, 74, 870 P.2d 1166, 1170 (App. 1993). Because this case turns on an issue of statutory interpretation for which our review is *de novo*, the outcome would be the same under either standard. *See Prince v. City of Apache Junction*, 185 Ariz. 43, 45, 912 P.2d 47, 49 (App. 1996) (issues of statutory interpretation reviewed *de novo*).

immunity statute to apply, the property on which the injury occurred must qualify as a "premises" as described in the statute, and MacKinney must have been a recreational user of the property under the statute's terms. *See* § 33-1551(A).

**Premises**

¶8      The city first contends the trial court erred in concluding a golf course is not a "premises" that implicates recreational-use immunity. Section 33-1551(A) (1998), the version of the statute in force when MacKinney was injured,[3] provides:

> A public or private owner, easement holder, lessee or occupant of premises is not liable to a recreational or educational user except upon a showing that the owner, easement holder, lessee or occupant was guilty of wilful, malicious or grossly negligent conduct which was a direct cause of the injury to the recreational or educational user.

MacKinney alleged only that the city was negligent, not that its conduct was wilful, malicious, or grossly negligent; thus, if the elements of § 33-1551 are met, it provides the city with immunity from his lawsuit. *See Andresano*, 213 Ariz. 65, ¶ 7, 138 P.3d at 1194. Section 33-1551(C)(3) (1998) defines "premises" to include

> agricultural, range, open space, park, flood control, mining, forest or railroad lands, and any other similar lands, wherever located, which are available to a recreational or educational user, including, but not limited to, paved or unpaved multi-

---

[3]The legislature has amended § 33-1551 twice since MacKinney was injured. *See* 2012 Ariz. Sess. Laws, ch. 14, § 1; 2011 Ariz. Sess. Laws, ch. 123, § 1. We apply the version in force at the time of the injury. *See* A.R.S. § 1-244 ("No statute is retroactive unless expressly declared therein."); *Watts v. Ariz. Dep't of Revenue*, 221 Ariz. 97, ¶ 35, 210 P.3d 1268, 1275 (App. 2009) (finding statutory amendment not retroactive where amended version did not include retroactivity provision). Although the statute has been amended, our reasoning would apply to the current version as well.

6

use trails and special purpose roads or trails not open to automotive use by the public and any building, improvement, fixture, water conveyance system, body of water, channel, canal or lateral, road, trail or structure on such lands.

As MacKinney points out, neither former § 33-1551 nor the current version expressly includes a golf course within the definition of premises.

¶9 The city argues a golf course is similar to a park and therefore is included in the definition of "premises" through the phrase "other similar lands." *See* § 33-1551(C)(3) (1998) ("premises" includes park lands "and any other similar lands"). The city points out that when the legislature expanded the definition of "premises" to include park lands, *see* 1993 Ariz. Sess. Laws, ch. 90, § 25, case law already had established for various purposes that golf courses are parks or are similar to parks. *See Moore v. Valley Garden Ctr.*, 66 Ariz. 209, 212-13, 185 P.2d 998, 1000 (1947) (golf courses "constitute a recreational use of land for park purposes"); *see also City of Phoenix v. Moore*, 57 Ariz. 350, 357-59, 113 P.2d 935, 938-39 (1941) (noting parks, playgrounds, swimming pools, and golf courses are "recreational facilities"); *Maricopa Cnty. v. Maricopa Cnty. Mun. Water Conserv. Dist. No. 1*, 171 Ariz. 325, 329, 830 P.2d 846, 850 (App. 1991) (analogizing public parks, swimming pools, and golf courses). Because the legislature is presumed to be aware of existing law when it enacts or modifies a statute, *State v. Garza Rodriguez*, 164 Ariz. 107, 111, 791 P.2d 633, 637 (1990), we agree that the comparisons in these decisions support the city's argument that the legislature intended golf courses to be included in "other similar lands."

7

¶10     We find additional evidence of the legislature's intent to include golf courses within the definition of "premises" in the evolution of § 33-1551. In *Walker*, relied upon by MacKinney, this court held that a previous version of the statute did not provide recreational immunity against liability for injuries suffered by a bicyclist during a fall on a bicycle path in an urban greenbelt. 163 Ariz. 206, 786 P.2d 1057. We concluded that the path was not a "premises" under the recreational immunity statute as originally enacted because it was not included in the four types of premises then enumerated in the statute: agricultural, range, mining, or forest lands.[4] *Id.* at 209, 786 P.2d at 1060. We also determined that it was not within the scope of "other similar lands" because, whereas the lands enumerated in the statute all are "relatively large areas of land," "are located outside urban areas in thinly populated rural or semi-rural locales," and are "often in a natural, undeveloped state," a maintained bike path in an urban, residential area, by contrast, does not exhibit any of these characteristics and therefore could not be considered similar under the statute. *Id.* at 210-11, 786 P.2d at 1061-62.

¶11     In 1993, our legislature amended the definition of premises contained in § 33-1551 to add to the enumerated lands. *See* 1993 Ariz. Sess. Laws, ch. 90, § 25. As amended, the definition of "premises" was broadened to include

> agricultural, range, open space, park, flood control, mining,
> forest or railroad lands, and any other similar lands, wherever

---

[4]Section 33-1551(B)(1) (1983) provided, "'Premises' means agricultural, range, mining or forest lands, and any other similar lands which by agreement are made available to a recreational user, and any building or structure on such lands." 1983 Ariz. Sess. Laws, ch. 82, § 1.

8

located, which are available to a recreational or educational user, including, but not limited to, paved or unpaved multi-use trails and special purpose roads or trails not open to automotive use by the public and any building improvement, fixture, water conveyance system, body of water, channel, canal or lateral, road, trail or structure on such lands.

§ 33-1551 (1993). Certain of the 1993 amendments clearly repudiate portions of this court's reasoning in *Walker*. The addition of park lands suggests the legislature intended to immunize owners of properties that are not necessarily large areas of land located in "thinly populated rural or semi-rural locales" as we found in *Walker*, 163 Ariz. at 210, 786 P.2d at 1061. This conclusion is supported by the addition of the words "wherever located" to the definition of premises. *See* 1993 Ariz. Sess. Laws, ch. 90, § 25. And the addition of "paved or unpaved multi-use trails and special purpose roads or trails not open to automotive use by the public" and any "improvement, fixture, water conveyance system, body of water, channel, canal or lateral, road, [or] trail," *id.*, means our rationale that the enumerated lands were "often in a natural, undeveloped state," *Walker*, 163 Ariz. at 210, 786 P.2d at 1061, is no longer controlling in determining whether property is contained within the scope of "other similar lands." Given the breadth of the 1993 amendments, it is clear that *Walker* has been superseded on this point. *See Garza Rodriguez*, 164 Ariz. at 111, 791 P.2d at 637 (legislative amendment of statute raises presumption of intentional change to existing law).

¶12        In light of the broader definition of "premises" established by the 1993 amendments, the present case requires us to determine whether a golf course is "similar" to any of the types of lands enumerated under § 33-1551 (1998) because golf courses are

9

not specifically listed in the definition. One type of property added in the 1993 amendments was "park . . . lands." 1993 Ariz. Sess. Laws, ch. 90, § 25. And one of the common definitions of "park" is "[a] tract of land set aside for public use, as . . . [a]n expanse of enclosed grounds for recreational use within or adjoining a town." *The American Heritage Dictionary* 903 (2d college ed. 1982). "Golf," of course, is "[a] game played on a large outdoor course with a series of 9 or 18 holes spaced far apart." *Id.* at 566. Our legislature has defined "golf course" in another context as "substantially undeveloped land, including amenities such as landscaping, irrigation systems, paths and golf greens and tees, that may be used for golfing or golfing practice by the public or by members and guests of a private club." A.R.S. § 42-13151.

**¶13**        In view of these definitions and our legislature's expansion of the types of lands that implicate recreational immunity in supersession of *Walker*, we conclude golf courses are sufficiently similar to park lands to be included in the statutory definition of "[p]remises" under § 33-1551(C)(3) (1998). A golf course fits within the common definition of "park"—it is a parcel of property kept for recreational use that is designed and maintained for the primary purpose of allowing users to engage in an undisputedly recreational activity. Accordingly, that MacKinney was injured on a golf course does not avoid the applicability of the recreational-use immunity statute.

**Recreational User**

**¶14**        Although the golf course is a premises under § 33-1551, for the city to have been immune MacKinney must also have been a recreational user. Because the trial

10

court's ruling on the premises issue prevented resolution of this question, we must vacate the judgment and remand for additional proceedings. In the interest of judicial economy, however, and because we have had the benefit of briefing and oral argument by the parties on the issue, we address certain aspects of the recreational-user question that will undoubtedly arise on remand. *See Czarnecki v. Volkswagen of Am.*, 172 Ariz. 408, 415 n.6, 837 P.2d 1143, 1150 n.6 (App. 1991) (addressing "other issues raised on appeal" as a matter of judicial economy "because they may reoccur on a retrial"); *State ex rel. Miller v. J.R. Norton Co.*, 158 Ariz. 50, 52, 760 P.2d 1099, 1101 (App. 1988) (same); *cf. Schwab v. Matley*, 164 Ariz. 421, 422 n.2, 793 P.2d 1088, 1089 n.2 (1990) (reaching constitutional issue where issue had been briefed and principles of judicial economy dictated, despite availability of non-constitutional grounds).

¶15         Section 33-1551(C)(4) (1998) defines a "[r]ecreational user" as

> a person to whom permission has been granted or implied without the payment of an admission fee or any other consideration to travel across or to enter upon premises to hunt, fish, trap, camp, hike, ride, exercise, swim or engage in similar pursuits. The purchase of a state hunting, trapping or fishing license is not the payment of an admission fee or any other consideration as provided in this section. A nominal fee that is charged by a public entity or a nonprofit corporation to offset the cost of providing the educational or recreational premises and associated services does not constitute an admission fee or any other consideration as prescribed by this section.

Golf is similar to the activities enumerated in this definition in that it is an outdoor recreational pursuit included in the broad term "exercise." *See* discussion *supra* ¶ 12. But even if a person uses property recreationally, he nevertheless is not a recreational

11

user if he paid an admission fee in exchange for use of the property. The city makes three arguments in an attempt to show that MacKinney did not pay an admission fee and therefore was a recreational user.

¶16 The city first asserts MacKinney personally paid no fee to play golf; instead, his son, with whom he was playing, paid a fee on his behalf. Although MacKinney agreed with this assertion at his deposition, he later recanted it in an affidavit submitted to the trial court with his "Separate Statement of Facts Re A.R.S. [§] 33-1551." However, any factual dispute as to whether MacKinney paid a fee himself is immaterial to the question of whether he was a recreational user because "'[a] fee does not necessarily have to be paid by the injured party himself to take a case outside the recreational user statute so long as someone in the plaintiff's party has paid a fee to utilize the overall benefits.'" *Prince*, 185 Ariz. at 46 n.5, 912 P.2d at 50 n.5, *quoting Reed v. City of Miamisburg*, 644 N.E.2d 1094, 1095 (Ohio Ct. App. 1993). Thus, even if MacKinney did not personally pay his fee, that does not determine whether he would qualify as a recreational user.

¶17 The city additionally argues MacKinney was a recreational user for purposes of the statute because his fee was paid to GolfNow, a third-party booking service, rather than to the golf course. To support this argument, the city relies on *Andresano*, 213 Ariz. 65, 138 P.3d 1192, in which we held that the plaintiff had not paid an admission fee to participate in a fundraising event where the sponsoring organization had paid a fee to hold the event at a county park but the individual participants had paid

12

nothing. *Id.* ¶¶ 5, 13-21. Specifically, we concluded that the plaintiff "was a 'recreational user' because her permitted use of the . . . [p]ark facilities was 'without the payment of an admission fee or any other consideration' by her or on her behalf." *Id.* ¶ 20, *quoting* § 33-1551(C)(4) (1998). By contrast, it is undisputed that MacKinney was required to pay a fee, whether to the city directly or to a third party, in order to enter the golf course on the day of his injury. We therefore disagree with the city that MacKinney was a recreational user as a matter of law simply because the fee was paid to "an independent commercial venture" with which the city had a contractual relationship.

¶18     Finally, the city argues the fee paid on MacKinney's behalf was a nominal one and therefore exempt under § 33-1551(C)(4) (1998). In the 1998 amendment to § 33-1551, our legislature added the following sentence to the definition of "[r]ecreational user":

> A nominal fee that is charged by a public entity or a nonprofit corporation to offset the cost of providing the educational or recreational premises and associated services does not constitute an admission fee or any other consideration as prescribed by this section.

1998 Ariz. Sess. Laws, ch. 22, § 1.[5] We agree with the city that if MacKinney's fee was a nominal one used merely to offset the cost of providing the golf course and associated

---

[5]Below, as he does on appeal, MacKinney supported his argument that the fee charged was not "nominal" by relying on our holding in *Prince* that the payment of any fee would exclude the payer from recreational-user status. 185 Ariz. at 46, 912 P.2d at 50. MacKinney's reliance was misplaced, however, because the special exemption for nominal fees was not added to § 33-1551 until 1998—well after *Prince* was decided. The 1998 addition thus superseded *Prince* on this point.

13

services, the payment of that fee would not affect his status as a recreational user for purposes of the immunity statute.[6] However, for the reasons detailed below, we cannot agree with the city that the fee paid was necessarily "nominal" as a matter of law.

¶19        To classify the payer of a fee as a recreational user under the statute, the fee must have two characteristics: it must be "nominal," and it must be charged to offset the cost of providing the recreational premises and associated services. § 33-1551(C)(4) (1998). The city urges an alternative reading of the nominal-fee provision, arguing that it was the legislature's intent to define "nominal" as a fee charged to offset the cost of providing the premises and associated services, rather than to express these as two separate requirements. Although the statute is arguably ambiguous in this regard, the city's proposed resolution of the ambiguity fails for two reasons. When an ambiguity exists in an immunity statute, we have a duty to interpret the statute narrowly to avoid granting immunity that was not intended. *Prince*, 185 Ariz. at 45, 912 P.2d at 49. And, when construing any statute, we look to its language and interpret it to give effect to each word, "such that 'no clause, sentence or word is rendered superfluous, void, contradictory or insignificant.'" *State ex rel. Dep't of Econ. Sec. v. Hayden*, 210 Ariz. 522, ¶ 7, 115 P.3d 116, 117 (2005), *quoting Bilke v. State*, 206 Ariz. 462, ¶ 11, 80 P.3d 269, 271

---

[6]MacKinney submitted in this court a request to file an addendum to his answering brief in which he points to an acknowledgement by the city in response to his requests for admissions that a portion of green-fees revenue is used for advertising purposes, and argues for the first time that such use negates his status as a recreational user. The argument was not raised below, however, and therefore is waived on appeal. *Englert v. Carondelet Health Network*, 199 Ariz. 21, ¶ 13, 13 P.3d 763, 768 (App. 2000) (appellate court does not consider issues raised for first time on appeal).

14

(2003); *accord City of Tucson v. Clear Channel Outdoor, Inc.*, 218 Ariz. 172, ¶ 33, 181 P.3d 219, 230 (App. 2008) ("We avoid an interpretation that makes 'any language superfluous or redundant.'"), *quoting Thomas & King, Inc. v. City of Phoenix*, 208 Ariz. 203, ¶ 9, 92 P.3d 429, 432 (App. 2004). Not only would the city's proposed interpretation render the word "nominal" completely superfluous, but it also would provide broad immunity that may not have been intended by the legislature. Accordingly, absent language unambiguously expressing legislative intent to equate a nominal fee with a fee used to offset the cost of providing the recreational premises, we must read these as two separate requirements.

¶20        The legislature has not defined "nominal" for purposes of the recreational-use immunity statute, nor has our research disclosed any case law addressing this issue. The plain meaning of the word, when relating to a price or amount, is: "Insignificantly small; trifling: [*e.g.,*] *a nominal sum*." *The American Heritage Dictionary* 845; *see also Black's Law Dictionary* 1148 (9th ed. 2009) ("nominal" means "trifling, esp[ecially] as compared to what would be expected"). *The American Heritage Dictionary* provides an additional usage note: "*Nominal* in one of its senses means 'in name only.' Hence a *nominal payment* is a token payment, bearing no relation to the real value of what is being paid for. The word is often extended in use, especially by sellers, to describe a low or bargain price." *Id.* at 845. Although this does not provide a clear legal standard for determining whether any particular fee is "nominal" for purposes of the recreational-use immunity statute, unless and until the legislature speaks more definitively in this area, the

15

question can be answered only through a fact-specific inquiry that incorporates relevant factors from the definition of "nominal" as that word is commonly understood.[7] Whether the fee charged by the golf course in this case fit within the definition of "nominal" was disputed by the parties and, under the standard articulated above, is a mixed question of law and fact that may require additional findings.[8] *See Prince*, 185 Ariz. at 45, 912 P.2d at 49 (trial court's rulings, including whether plaintiff a recreational user under § 33-1551, involved mixed questions of law and fact). As MacKinney conceded at oral argument in this court, because the trial court's denial of summary judgment was based on its conclusion that the golf course was not a "premises," the question of whether the fee was a nominal fee or an admission fee was never reached; the issue remains to be determined.

**Conclusion**

¶21        A golf course is a "premises" covered by Arizona's recreational-use immunity statute, and thus the city may be entitled to immunity if MacKinney paid a nominal fee rather than an admission fee, such that he was a recreational user under

---

[7]Such factors might include, for example, the amount of the fee, the extent to which it approximates the value of the service received in exchange for it, and the fees charged for similar recreational uses in the community.

[8]Although the trial court initially concluded that the nominal-fee question presented an issue of fact for trial, upon remand this may or may not be the case. *See Filer v. Tohono O'Odham Nation Gaming Enter.*, 212 Ariz. 167, n.2, 129 P.3d 78, 80 n.2 (App. 2006) (trial court determines whether facts sufficient to establish immunity if no disputed factual issues); *Link v. Pima Cnty.*, 193 Ariz. 336, ¶ 18, 972 P.2d 669, 674 (App. 1998) (absent factual dispute, no need for jury determination of facts prior to determining existence of immunity).

§ 33-1551. Because the trial court incorrectly concluded that the golf course was not a premises, the determinative question of whether or not the fee was "nominal" never was addressed or resolved below, and we are constrained to vacate the judgment and remand this matter for further proceedings consistent with this decision.

/s/ *Philip G. Espinosa*
PHILIP G. ESPINOSA, Judge

CONCURRING:

/s/ *Garye L. Vásquez*
GARYE L. VÁSQUEZ, Presiding Judge

/s/ *Virginia C. Kelly*
VIRGINIA C. KELLY, Judge

17