NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

YUNIER ALMAGUER BETANCOURT, *Plaintiff/Appellant,*

*v.*

CITY OF PHOENIX, *Defendant/Appellee.*

No. 1 CA-CV 16-0361
FILED 11-21-2017

Appeal from the Superior Court in Maricopa County
No. CV2013-007902
The Honorable Randall H. Warner, Judge

**AFFIRMED**

COUNSEL

Jimmy Borunda, Attorney at Law, Phoenix
By Jimmy Borunda
*Counsel for Plaintiff/Appellant*

Berke Law Firm, PLLC, Phoenix
By Lori V. Berke, Jody C. Corbett
*Co-Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

---

Presiding Judge James P. Beene delivered the decision of the Court, in which Judge Randall M. Howe and Judge Kent E. Cattani joined.

---

**B E E N E**, Judge:

¶1   Plaintiff Yunier Almaguer Betancourt ("Betancourt") appeals the superior court's judgment in favor of Defendant City of Phoenix ("City"). For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2   On July 14, 2012 at approximately 11:00 p.m., Phoenix police officers observed a car driven by Betancourt commit a traffic violation. A check of the car's license plate revealed that it was stolen. When officers attempted to make a traffic stop, Betancourt failed to comply. Instead, he drove off, leading police on a 60-mile pursuit that involved several officers. Eventually, officers disabled Betancourt's car. Once stopped, Betancourt climbed out of his car and onto the hood of an adjacent patrol car. At this point, Officer Nicholas Thompson pointed his weapon at Betancourt and ordered him to get on the ground.

¶3   According to officers, Betancourt refused to comply with their orders, and instead raised his clenched fists and yelled obscenities at them. Officer Thompson testified that, while holding his weapon, he attempted to arrest Betancourt. Betancourt then made a motion that caused Thompson to believe he was grabbing for a gun. In response, Thompson struck Betancourt in the face with his weapon. In contrast, Betancourt testified that when he exited his car, he knelt down and held up his hands in an attempt to surrender, saying "I give up. I give up." He denied being hit in the face with the officer's weapon. Rather, Betancourt said that he saw an officer standing approximately 10 to 15 feet away fire a rifle at him and something struck him near his left eye. Officers testified that once out of his car, Betancourt was uncooperative and resisted arrest, prompting them to use force to place him in handcuffs. Conversely, Betancourt testified that after he was shot and fell to the ground, officers kicked and choked him in an attempt to arrest him. He claims he told officers, "this hurts" and "I'm not resisting," but they told him to "shut up" and continued to kick and hit him.

2

¶4	After his arrest, Betancourt was taken to the hospital. He tested positive for amphetamines, methamphetamines, and cannabinoids. He suffered a left orbital floor fracture, small sinus fractures, and soft issue injuries to parts of his face. He claims his injuries were from being shot in the face, resulting in permanent vision loss, headaches, pain, and inability to sleep.

¶5	Betancourt was subsequently convicted of several felony offenses related to this incident and sentenced to 18 years in prison.

¶6	In June 2013, Betancourt filed an action against the City alleging that officers used "unreasonable, unnecessary and excessive force" in arresting him. He alleged counts of assault and battery, negligence *per se*, and negligence. The City moved to dismiss Betancourt's claims, arguing that (1) the claims were barred under Arizona Revised Statutes ("A.R.S.") section 12-820.05(B); (2) the claims were barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); (3) the amended complaint failed to state a claim upon which relief could be granted; and (4) Betancourt was precluded from seeking punitive damages under A.R.S. § 12-820.04. The superior court granted the City's motion in part and denied it in part. The court granted dismissal of Betancourt's claims for negligence *per se*, joint and several liability, and punitive damages.

¶7	Over the next two years, the parties conducted discovery on Betancourt's remaining claims for assault and battery and negligence. The City moved for summary judgment, again arguing that A.R.S. § 12-820.05(B) and *Heck* barred Betancourt's claims. The superior court granted summary judgment on Betancourt's remaining claims, finding the City immune from liability under A.R.S. § 12-820.05(B).

¶8	Betancourt timely appealed and we have jurisdiction pursuant to A.R.S. § 12-2101(A).

## DISCUSSION

¶9	Entry of summary judgment is proper "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). We determine *de novo* whether any genuine issue of material fact exists and whether the trial court erred in applying the law, and will uphold the court's ruling if correct for any reason. *Logerquist v. Danforth*, 188 Ariz. 16, 18 (App. 1996). We construe the evidence and reasonable inferences in the light most favorable to the non-moving party. *Wells Fargo Bank v. Ariz.*

*Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 201 Ariz. 474, 482, ¶ 13 (2002).

**¶10**          We review issues of statutory interpretation *de novo*. *Baker v. Univ. Physicians Healthcare*, 231 Ariz. 379, 387, ¶ 30 (2013). "Our primary goal in interpreting a statute is to give effect to the legislature's intent, and the language of a statute is the most reliable evidence of that intent." *MacKinney v. City of Tucson*, 231 Ariz. 584, 587, ¶ 7 (App. 2013). Accordingly, if the language is clear and unambiguous, we apply it as written. *Zamora v. Reinstein*, 185 Ariz. 272, 275 (1996). Under A.R.S. § 12-820.05(B),

> A public entity is not liable for losses that arise out of and are directly attributable to an act or omission determined by a court to be a criminal felony by a public employee unless the public entity knew of the public employee's propensity for that action. This subsection does not apply to acts or omissions arising out of the operation or use of a motor vehicle.

"By its clear and unambiguous language, § 12–820.05(B) insulates a public entity from liability for loss caused by an employee's felony criminal acts." *Gallagher v. Tucson Unified Sch. Dist.*, 237 Ariz. 254, 257, ¶ 10 (App. 2015).

## I.    Law-of-the-Case Doctrine

**¶11**          Betancourt argues the superior court previously found that A.R.S. § 12-820.05 does not apply when it denied the City's motion to dismiss. Thus, Betancourt maintains that this prior ruling is "law of the case," preventing the court from granting summary judgment on the same grounds. He also argues the court failed to explain the "changed circumstances or new facts" that occurred from the denial of the motion to dismiss to the granting of summary judgment.

**¶12**          "The doctrine referred to as 'law of the case' describes the judicial policy of refusing to reopen questions previously decided in the same case by the same court or a higher appellate court." *Powell-Cerkoney v. TCR-Montana Ranch Joint Venture, II*, 176 Ariz. 275, 278 (App. 1993). "When, as in this case, we apply the doctrine to decisions of the same court, we treat law of the case as a procedural doctrine rather than as a substantive limitation on the court's power." *Id*. Law of the case applies when "the facts and issues are substantially the same as those on which the first decision rested." *Ctr. Bay Gardens, L.L.C. v. City of Tempe City Council*, 214 Ariz. 353, 356, ¶ 17 (App. 2007). "A court does not lack the power to change

a ruling simply because it ruled on the question at an earlier stage," *Love v. Farmers Ins. Grp.*, 121 Ariz. 71, 73 (App. 1978), nor is it "precluded from reconsidering an earlier decision when a substantial change occurs in . . . evidence," *Hall v. Smith*, 214 Ariz. 309, 317, ¶ 29 (App. 2007) (internal quotations and citation omitted).

¶13 When the superior court denied the City's motion to dismiss in October 2013, the only evidence before the court was Betancourt's allegations in his amended complaint. With that limited information, the superior court found

> The City argues that if the officers used excessive force as Betancourt alleges, they necessarily would have committed felonies and therefore the City cannot be liable. This argument fails because the officers could have used excessive force without committing a criminal felony. Under A.R.S. § 13-409, their use of force could have been justified, thus negating a felony, and yet the extent of the force could still be constitutionally excessive.

¶14 More than two years later and after extensive discovery, the court granted the City's motion for summary judgment on the basis that the City was immune from liability under A.R.S. § 12-820.05(B). The court noted it had previously denied the City's motion to dismiss on the same grounds, but now found

> If the trier of fact believes Betancourt, then the officer who shot him was without legal justification and, therefore, committed aggravated assault. Because the officer would have committed a felony, and there is no evidence that the officer had a propensity for such action, the City is immune as a matter of law.

> Betancourt argues that the jury could find the officer negligently discharged his weapon, or negligently misaimed or misfired, in which case the use of excessive force would not be a felony. There is no evidence in the record, however, to support these facts. The trier of fact is not permitted to speculate that, just because Plaintiff was shot, someone could have been negligent in shooting him.

¶15 Between the time of the City's motion to dismiss and its motion for summary judgment, the superior court received a substantial amount of evidence, including (1) Betancourt's sworn deposition testimony

taken in February 2015; (2) sworn testimony of several police officers given during Betancourt's June 2013 criminal trial; and (3) our decision affirming Betancourt's criminal convictions and sentences, *see State v. Almaguer*, 1 CA-CR 13-0723, 2015 WL 7304461, at * 1, ¶¶ 1-2 (Ariz. App. Nov. 19, 2015) (mem. decision).

**¶16** Clearly, there had been a "substantial change" in the case and a quantum of evidence before the court. The court's preliminary ruling at the motion-to-dismiss stage merely found that given Betancourt's allegations, officers *could have* used excessive force without committing a criminal felony. Meaning, pending development of evidence as the case progressed, the City *might not be immune* from liability under A.R.S. § 12-820.05(B). When the court granted summary judgment after extensive discovery had occurred, the facts and issues were not substantially the same as those on which the court's denial of the motion to dismiss rested. And in light of the substantial change in the evidence, the court simply reconsidered its earlier decision. Thus, the court did not err in relying on this change when it granted the City's summary judgment motion.

## II. City's Immunity from Liability under A.R.S. § 12-820.05(B)

**¶17** Betancourt argues that A.R.S. § 12-820.05(B) does not apply because the officer's "acts or omissions" were not felonious because officers are justified in using force to apprehend a fleeing suspect.[1] He contends that excessive force in making an arrest "does not necessarily involve intentional criminal conduct on the officer's part" and here, the officer's shooting of Betancourt "could have been accidental <u>or</u> negligent." We disagree.

---

[1] Betancourt also argues that Arizona Revised Statutes section 12-820.05(B): (1) does not apply because the events here arose "out of the operation or use of a motor vehicle"; and (2) violates the "anti-abrogation clause" of the Arizona Constitution. Because Betancourt failed to raise these arguments before the superior court, however, we deem them waived and do not address them. *See Trantor v. Fredrikson*, 179 Ariz. 299, 300 (1994) ("Because a trial court and opposing counsel should be afforded the opportunity to correct any asserted defects before error may be raised on appeal, absent extraordinary circumstances, errors not raised in the trial court cannot be raised on appeal."); *Englert v. Carondelet Health Network*, 199 Ariz. 21, 26, ¶ 13 (App. 2000) ("we generally do not consider issues, even constitutional issues, raised for the first time on appeal").

**¶18** Under A.R.S. § 13-409, a law enforcement officer is justified in using physical force in making an arrest if (1) a reasonable person would believe that such force was immediately necessary to effect the arrest, (2) officers made known to Betancourt the purpose of the arrest or believed Betancourt knew the reason he was being arrested, and (3) a reasonable person would believe the arrest was lawful.

**¶19** Here, Betancourt claims officers used excessive force after he attempted to passively surrender to police. He claims that after fleeing and leading officers on a 60-mile pursuit, he peacefully submitted to the officers' request to surrender. Betancourt testified that in response to his actions, an officer, standing approximately 10 to 15 feet away, fired a weapon at him, striking him in the face. He claims that after being shot, officers began to assault him before placing him under arrest. Accepting this version of events, no reasonable person would believe the officers' use of force was immediately necessary to arrest Betancourt because he was peacefully surrendering to police authority, and the officers' conduct was necessarily felonious. Thus, under A.R.S. § 12-820.05(B), the City would be immune from liability.

**¶20** Betancourt's remaining claims against the City are for assault and battery and negligence. To establish the tort of assault and battery, Betancourt must prove that officers intentionally caused harmful or offensive contact with him. *Johnson v. Pankratz*, 196 Ariz. 621, 623, ¶ 6 (App. 2000). To establish a claim for negligence, Betancourt must prove that (1) officers owed him a duty requiring them to conform to a certain standard of care, (2) officers breached that standard of care, (3) officers' conduct caused his injuries, and (4) actual damages. *Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 9 (2007).

**¶21** The City would similarly be immune from liability for assault and battery, however, if Officer Thompson's shooting (which Betancourt claims was the cause of his injuries) was determined to be a criminal felony, rather than a tort. As relevant here, a person commits aggravated assault if the person "[i]ntentionally, knowingly or recklessly" (1) causes serious physical injury to another; (2) uses a deadly weapon or dangerous instrument; or (3) causes temporary but substantial disfigurement, temporary but substantial loss or impairment of any body organ or part or a fracture of any body part. A.R.S. § 13-1203(A), -1204(A). While Betancourt contends that Officer Thompson's shooting was not intentional and could have been accidental or negligent, no evidence in the record supports such an argument. There are only two versions of that night's events. First, Officer Thompson stated that he struck Betancourt in the face with his

weapon when he believed Bentancourt was reaching for his gun. This act would constitute an intentional act. Second, Betancourt stated that while trying to comply with the officers' commands to surrender, he saw an officer aim a weapon at him and shoot, also, an intentional act, or at the very least, a reckless act by pointing a loaded weapon at an individual. Under either scenario, Betancourt cannot establish a claim for negligence.

¶22 The record reflects that Officer Thompson was either justified in using force (under the State's version of events) or that he intentionally or recklessly used a deadly weapon and caused Betancourt serious physical injury, which would be a felony because Betancourt suffered temporary but substantial disfigurement; a left orbital floor fracture, small sinus fractures, and soft tissue injuries to parts of his face.

¶23 The superior court correctly found that if the trier of fact believed Betancourt, then Officer Thompson was without legal justification and, thus, committed aggravated assault, a felony. And, because no evidence showed that Officer Thompson had a propensity for such action, the City was immune as a matter of law. The court further found that no evidence supported Betancourt's claim that Officer Thompson could have negligently discharged his weapon and that the trier of fact was not permitted to speculate as to the existence of some other type of evidence that would support that claim. We agree. Given this record and taking the evidence as Betancourt posits, no genuine dispute as to any material fact exists and the court did not err in granting summary judgment.[2]

---

[2] The City argues that even if we do not affirm summary judgment on the basis that Arizona Revised Statutes section 12-820.05(B) bars Betancourt's claims, we should affirm because *Heck v. Humphrey*, 512 U.S. 477 (1994), bars them. Because we find, as the superior court did, that the City is immune from liability based on § 12-820.05(B), we need not address this argument.

## CONCLUSION

¶24       For the foregoing reasons, we affirm the superior court's grant of summary judgment.

